Kerry W. **ILLES**, Petitioner–Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent–Appellee.

No. 91–2412.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1992.

Decided Sept. 21, 1992.*

* This decision was originally issued as an "unpublished decision" filed on September 21, 1992.

Mark E. Gammons (argued and briefed), Rocky River, OH, Robert J. Fedor, Rocky River, OH, for petitioner-appellant.

Abraham N.M. Shashy, Jr., Chief Counsel, I.R.S., Office of Chief Counsel, Gary R. Allen, Acting Chief (briefed) Doris D. Coles, Bruce R. Ellisen, Janice B. Geier (argued), U.S. Dept. of Justice, Appellate Section Tax Div., DC, for respondent-appellee.

Before: NELSON, NORRIS, and SUHRHEINRICH, Circuit Judges.

PER CURIAM.

Taxpayer Kerry W. Illes appeals from the Tax Court's determination that he is liable for deficiencies and penalties as a result of his investment in a tax shelter that lacked economic substance. We AFFIRM.

I.

During 1984 and 1985, Structured Shelters, Inc. ("SSI") through its agent Thomas A. Graham, marketed a product called Children's Classics Audio Cassettes ("CCAC"). The CCAC promotion had two phases, a production phase and a lease phase. The 1985 production phase involved the purchase of the right to reproduce artwork and to use titles for the products of new master cassette recordings from Sonya, Inc. Sonya had in turn purchased these rights from the investors in SSI's 1981

promotion of master recordings of children's stories. Thomas Graham and his wife were the majority shareholders of Sonya.

As part of the 1985 production phase, investors purchased four titles from Sonya for $115,000; each payment consisting of $25,000 cash and the remainder in a nonrecourse note. The 1985 production phase investors also entered into agreements with Marketing Complex, Inc. ("MCI") to develop an advertisement program. Payment of that agreement included $2,000 in cash and a note for $6,000.

In the 1985 lease phase of the CCAC promotion, investors leased for a term of five years the right to produce cassette tapes from the master recordings that were to be developed by the CCAC production phase investors. The 1985 lease phase investors agreed to pay $16,700; which was comprised of $4,175 in cash and $12,525 in nonrecourse notes. These investors also contracted with MCI for marketing services, paying $2,000 in cash and $6,000 in notes.

In 1984, Graham hired taxpayer Kerry Illes, an architect, to perform some work for him. Graham in turn persuaded taxpayer to invest in the CCAC program. Illes then hired Graham to be his accountant. Illes purchased one title as a 1985 production phase investor and leased the right to reproduce another as a 1985 lease phase investor. On his 1985 federal income tax return, taxpayer claimed deductions totaling $61,775 and an investment tax credit of $5,473. The Commissioner of the Internal Revenue ("the Commissioner") disallowed the claimed deductions and credit and also assessed various additions to tax and an increased interest rate for Illes's underpayment based on its conclusion that the enterprise lacked economic substance. The Tax Court upheld the Commissioner's decision in all respects.

Taxpayer stipulated in the Tax Court that both the 1985 CCAC production phase and the 1985 CCAC lease phase investments had no economic substance. He therefore does not contest the disallowance of deductions and credits based on these investments. However, taxpayer contends that he should be allowed to deduct his out-of-pocket expenditures made for these investments on the grounds that the losses were incurred in a transaction entered into for profit. Illes also challenges each of the additions to tax and the use of the increased interest rate.

## II.

### A.

■ To be valid, an asserted deduction must satisfy both components of a two-part test. The threshold question is whether the transaction has economic substance. If the answer is yes, the question becomes whether the taxpayer was motivated by profit to participate in the transaction. *Rose v. Commissioner*, 868 F.2d 851, 853 (6th Cir.1989); *Mahoney v. Commissioner*, 808 F.2d 1219, 1220 (6th Cir.1987). If, however, the court determines that the transaction is a sham, the entire transaction is disallowed for federal tax purposes, and the second inquiry is never made. *Id.* Illes has stipulated that the CCAC transaction lacked economic substance. Therefore, the Commissioner properly disallowed the claimed section 165(c)(2) deduction, regardless of whether Illes was actually, honestly, and exclusively motivated by profit.

■ Illes argues that, because he reasonably believed the CCAC transaction had economic substance, the first part of the *Mahoney* test is satisfied. In support of this argument, Illes advances a contorted reading of our decisions in *Rose* and *Bryant v. Commissioner*, 928 F.2d 745 (6th Cir.1991). In these cases, we ruled that the proper test for whether "a transaction is a sham is whether the transaction has any practicable economic effects other than the creation of income tax losses. A taxpayer's subjective business purpose ... may be relevant to this inquiry." *Bryant*, 928 F.2d at 748 (quoting *Rose*, 868 F.2d at 853 (citations omitted)). Illes reads this passage to mean that because he reasonably and actually believed the CCAC transaction was not a sham, it must be regarded

as not a sham for section 165(c)(2) purposes.

Illes's interpretation conflates the two quite distinct parts of the *Mahoney* test. The first part consists of an examination of the transaction, not the taxpayer. If the transaction lacks economic substance, then the deduction must be disallowed without regard to the "niceties" of the taxpayer's intent. *Mahoney*, 808 F.2d at 1220. Moreover, Illes's interpretation would undermine the purpose of the *Mahoney* test by requiring us to first make the more difficult determination of the taxpayer's intent. *Cf. Bryant*, 928 F.2d at 749.

### B.

▮ The Commissioner found that Illes had underpaid his 1985 income tax due to negligence and therefore was subject to an addition to tax under I.R.C. § 6653(a)(1) & (2). The Tax Court upheld the Commissioner's determination. Illes argues that he reasonably relied on the professional advice of his accountant, Thomas Graham.

▮ The Commissioner's finding that an underpayment was caused by a taxpayer's negligence is presumptively correct, and the taxpayer who would have it overruled bears the burden of proving that he was not negligent. Moreover, we review the Tax Court's findings of fact regarding negligence for clear error. *Leuhsler v. Commissioner*, 963 F.2d 907, 910 (6th Cir. 1992); *Skeen v. Commissioner*, 864 F.2d 93, 96 (9th Cir.1989). "Negligence" as found in section 6653, is given its general definition, that is, "a lack of due care or a failure to do what a reasonable person would do under the circumstances." *Leuhsler*, 963 F.2d at 910.

Other than offering the vague assertion that Graham "suggested that this was a good investment to make for a retirement type situation"; Illes has presented no evidence regarding any advice Graham offered in connection with the CCAC transaction. This is not sufficient to meet Illes's burden of proving that a reasonable person would have relied upon the Graham's advice. *See Howard v. Commissioner*, 931 F.2d 578, 582 (9th Cir.1991); *Skeen*, 864

F.2d at 96, *adopted in Gomberg v. Commissioner*, 868 F.2d 865, 866–67 (6th Cir. 1989).

Illes responds by arguing that rather than specific advice, he relied on Graham's reputation. Illes introduced no evidence whatsoever of Graham's reputation, however. In fact, the only basis for reliance offered by Illes was the fact that, while a client of Illes, Graham paid his bills as submitted. The Tax Court found that a reasonable person who knew Graham had a personal stake in the CCAC venture would not commit nearly $150,000 before investigating the transaction independently and seeking independent advice. We cannot say this conclusion is clearly erroneous. *See Leuhsler*, 963 F.2d at 910–11.

Illes's attempt to equate himself with the taxpayers in *Heasley v. Commissioner*, 902 F.2d 380 (5th Cir.1990) is utterly misguided. Unlike the taxpayers in *Heasley*, Illes is a college graduate, who, for a number of years, has run his own architecture firm. More importantly, in direct contrast with the Heasleys, Illes offered no proof that he ever investigated the investment or sought independent professional advice on the validity and viability of the investments. Nor can Illes's asserted reliance on his accountant be viewed as reasonable, since Graham was not a disinterested source. Taxpayer has therefore failed to meet his burden of proof.

### C.

▮ The Commissioner also assessed an addition to tax against Illes because his tax underpayment resulted from a valuation overstatement. I.R.C. § 6659. Illes admits that the value he ascribed to his interest in CCAC assets exceeded their correct value by more than 250% but claims that his underpayment is not attributable to the valuation overstatement. Since his underpayment is the result of the CCAC being an economic sham, Illes argues that the underpayment is attributable to his claiming an improper deduction rather than to a valuation overstatement.

This is a false distinction. The tax benefit generated by the CCAC shelter was directly dependent upon the valuation overstatement, and the amount of the tax benefit was actually determined by the amount of the overvaluation. The entire artifice of the CCAC shelter was constructed on the foundation of the overvaluation of its assets. Plainly, then, Illes's underpayment was attributable to his valuation overstatement. As the Eighth Circuit has ruled, "When an underpayment stems from disallowed depreciation deductions or investment credit due to lack of economic substance, the deficiency is attributable to overstatement of value, and subject to the penalty under section 6659." *Massengill v. Commissioner*, 876 F.2d 616, 619–20 (8th Cir.1989); *accord Donahue v. Commissioner*, No. 91–1849, 959 F.2d 234 (Table), 1992 WL 70174, *5, 1992 U.S.App. LEXIS 7139, *13–*16 (6th Cir. Apr. 7, 1992) (unpublished per curiam); *Gilman v. Commissioner*, 933 F.2d 143, 151 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992).

Contrary to Illes's assertion, *Todd v. Commissioner*, 862 F.2d 540 (5th Cir.1988), and *Gainer v. Commissioner*, 893 F.2d 225 (9th Cir.1990), are inapposite. In both of those cases, the claimed deductions were disallowed because the property at issue was not put into service in the tax year for which the deduction and credit were claimed. Thus, the claimed deduction was improper without regard to whether the investors overvalued their interests in the property. As such, the underpayment was held not attributable to the overvaluation for the purposes of section 6659. *Todd*, 862 F.2d at 542–43; *Gainer*, 893 F.2d at 227–28.[1]

This is not the case with the CCAC shelter. Had it not been for the valuation overstatement, Illes would not have underpaid his taxes. Thus, *Todd* and *Gainer* are inapposite to Illes's claim. We adopted this distinction in *Donahue*, 1992 WL 70174, at *4–*5, 1992 U.S.App. LEXIS 3719, at *12–*13.

### D.

The Commissioner also assessed an addition to Illes's tax under I.R.C. § 6661, which provides for an addition where "there is a substantial understatement of income tax." Under subsection (c), the Commissioner has discretion to waive this addition if there was reasonable cause for the understatement and the taxpayer acted in good faith. I.R.C. § 6661(c). Illes resurrects his argument that he reasonably and in good faith relied on the advice of his accountant. For the reasons set forth in Part B, this argument is unavailing.

### E.

For substantial underpayments, those exceeding one thousand dollars, that are attributable to tax motivated transactions, the rate of interest is 120% of the standard underpayment rate. I.R.C. § 6621(c). Illes admits that if we affirm either the addition assessed under section 6659 or the finding that he did not act reasonably, then the interest was properly computed under section 6621(c). *See Gomberg*, 868 F.2d at 866–67; *Gilman*, 933 F.2d at 152. We have affirmed both and therefore affirm the Commissioner's interest computation.

### F.

For the foregoing reasons, we AFFIRM the Tax Court in all respects.

---

1. Illes does not cite *Heasley* in support of this argument even though the tax shelter involved there is more closely analogous to the CCAC scheme than is the FoodSource shelter. Nevertheless, *Donahue* also distinguished *Heasley* in a manner that renders it inapposite to this case. *Donahue*, 1992 WL 70174, at *4, 1992 U.S.App. LEXIS 7139, at *12.