131 T.C. No. 9

UNITED STATES TAX COURT

PETALUMA FX PARTNERS, LLC, RONALD SCOTT VANDERBEEK, A PARTNER
OTHER THAN THE TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24717-05.                     Filed October 23, 2008.

P challenges adjustments in a final partnership
administrative adjustment (FPAA) issued to a
partnership (PFP).  P stipulated most of the
adjustments in the FPAA and argues that the Court lacks
jurisdiction over the remaining determinations.  P
stipulated that he will not contest any determinations
in the FPAA over which the Court finds it has
jurisdiction except for the valuation penalties, which
P argues do not apply to the partnership items at issue
as a matter of law.  R argues that all remaining
determinations in the FPAA are partnership items or are
otherwise within the Court's jurisdiction and therefore
seeks summary judgment on all remaining issues.

        <u>Held</u>:  The issue of whether PFP should be
disregarded for tax purposes is a partnership item.

        <u>Held</u>, further, because we conclude that we have
jurisdiction to determine that PFP should be

disregarded for tax purposes, we may determine that the partners had no outside bases in PFP.

Held, further, the Court has jurisdiction to determine whether a valuation misstatement penalty applies.

Held, further, because P stipulated that he will not contest any determinations in the FPAA over which the Court determines it has jurisdiction and the Court finds it has jurisdiction over all determinations necessary to support the adjustments in the FPAA, we shall grant R's motion for summary judgment and deny petitioner's cross-motion for summary judgment.

Edward M. Robbins, Jr., for petitioner.

Gerald A Thorpe and Jason M. Kuratnick, for respondent.


OPINION


GOEKE, Judge:  This case is before the Court on the parties' cross-motions for summary judgment under Rule 121.[1]  The issues for decision are:  (1) Whether the Court has jurisdiction in this partnership-level proceeding to determine whether Petaluma FX Partners, L.L.C. (Petaluma) should be disregarded for tax purposes; (2) whether the Court has jurisdiction to determine whether the partners' outside bases in Petaluma were greater than zero; (3) whether the Court has jurisdiction to determine whether the accuracy-related penalties determined in a notice of final

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code (Code) in effect for the year at issue.

partnership administrative adjustment (FPAA) apply; (4) if the Court has jurisdiction to review the application of the accuracy-related penalties determined in the FPAA, whether the substantial valuation misstatement penalties are applicable to the adjustments of partnership items; and (5) whether the Court has jurisdiction to review the remaining determinations made in the FPAA.

For the reasons discussed below, we shall grant respondent's motion for summary judgment and deny petitioner's cross-motion for summary judgment.

## Background

Petaluma, a purported partnership,[2] was formed in August 2000. Bricolage Capital, L.L.C.; Stillwaters, Inc.; and Caballo, Inc., executed the operating agreement for the partnership. Petaluma's alleged business purpose was to engage in foreign currency option trading on behalf of its partners. On or about October 10, 2000, Ronald Thomas Vanderbeek (RTV) and Ronald Scott Vanderbeek (RSV) became partners of Petaluma by contributing pairs of offsetting long and short foreign currency options. In computing their adjusted bases in their interests in Petaluma, RTV and RSV increased their adjusted bases to reflect their contributions of the long options to Petaluma but did not

---

[2] Respondent argues that Petaluma was not a partnership for tax purposes. We use the terms "partnership", "partner", and related terms for convenience.

decrease their adjusted bases to reflect Petaluma's assumption of the short options (or written call options) they contributed.[3]

RTV and RSV withdrew from Petaluma on December 12, 2000. Petaluma distributed cash and shares of Scient stock to RTV and RSV in liquidation of their partnership interests.  Pursuant to section 732, RTV and RSV determined the adjusted bases in their Scient stock according to the adjusted bases in their interests in Petaluma immediately before the distribution.  RTV and RSV sold their Scient stock on December 26, 2000, and claimed losses on their 2000 Federal income tax returns of about $17,776,360 and $7,631,542, respectively.  At the time of the filing of the petition, Petaluma had no principal place of business and was engaged in no business.

On April 2, 2001, Petaluma timely filed its Form 1065, U.S. Return of Partnership Income, for the taxable year ending December 31, 2000.

On July 28, 2005, respondent issued an FPAA to the tax matters partner and the notice partners of Petaluma.  On August 30, 2005, respondent issued a second FPAA to correct an error regarding the taxable year to which the FPAA related.  See Petaluma FX Partners, LLC v. Commissioner, T.C. Memo. 2007-254. With exceptions not relevant here, the adjustments made in the

---

[3] Respondent does not dispute that RTV and RSV actually paid the net premiums for these options.

August 30, 2005, FPAA were identical to the adjustments made in the July 28, 2005, FPAA.[4] According to our holding in T.C. Memo. 2007-254, the FPAA issued on July 28, 2005, suffices to vest this Court with jurisdiction for Petaluma's tax year ending December 31, 2000. Further references herein to the FPAA are to the FPAA issued on July 28, 2005.

In the FPAA, respondent made the following adjustments:

| Item | As Reported | As Corrected |
|---|---|---|
| Capital contributions | $478,800 | -0- |
| Distributions--property other than money | 171,806 | -0- |
| Outside partnership basis | 24,943,505 | -0- |
| Distributions--money | 206,076 | -0- |
| Other income | 107,242 | -0- |
| Tax-exempt interest income | 547 | -0- |
| Assets--cash | 171,939 | -0- |
| Liabilities and capital--other current liabilities | 6,158 | -0- |
| Partners' capital accounts | 165,781 | -0- |

---

[4] The corrected FPAA omitted adjustments to liabilities and capital and assets/cash. Petitioner concedes that respondent's adjustments to these items are correct; therefore, our analysis is the same regardless of which FPAA serves as the basis for our jurisdiction.

The FPAA also included the following statement:

> Outside partnership basis and the penalties are
> determined at the partnership level.  The penalty will
> be imposed on the partner level.  The applicable
> penalty sections are IRC 6662(a), 6662(b)(1),
> 6662(b)(2), 6662(b)(3), 6662(c), 6662(d), 6662(e) and
> 6662(h).

In addition, respondent made a number of determinations regarding Petaluma and its partners under the title of "EXHIBIT A-- Explanation of Items" (the explanation of items).  The explanation of items is attached hereto as an appendix.  The explanation of items essentially provides the following explanations for the adjustments to Petaluma's partnership items: (1) Petaluma was not a partnership as a matter of fact; (2) even if Petaluma did exist as a partnership, it had no business purpose other than tax avoidance, lacked economic substance, constituted an economic sham, and was abusive under section 1.701-2, Income Tax Regs.; therefore, the transactions Petaluma entered into should be treated as having been entered into directly by the partners; and (3) neither Petaluma nor its partners entered into the options positions or purchased the foreign currency or stock with a profit motive for purposes of section 165(c)(2).  The explanation of items also provides several alternative reasons for reducing the partners' adjusted bases in Petaluma and determines that penalties under section 6662 are applicable.  On December 30, 2005, RSV, as a partner

other than the tax matters partner of Petaluma, filed a petition seeking review of the adjustments set forth in the FPAA.

On May 22, 2007, the parties filed a stipulation of settled issues (stipulation). Petitioner stipulated that the following partnership items should be adjusted according to the FPAA: Other income, tax-exempt interest income, distributions--money, distributions--property other than money, capital contributions, assets--cash, liabilities and capital--other current liabilities, and partner's capital accounts. Petitioner further stipulated that his position is that the Court lacks jurisdiction to consider the remaining issues raised in the FPAA, which include the partners' aggregate adjusted basis in the partnership (or outside basis) and the determinations in the explanation of items, including the penalties. However, petitioner also stipulated that he would not contest any issues raised by the FPAA over which the Court has jurisdiction except for the issue of whether the valuation misstatement penalties apply.

Respondent filed a motion for summary judgment asserting that the Court has jurisdiction over the remaining issues raised by the FPAA because they all relate to partnership items and that a decision should be entered in favor of respondent on the remaining issues.

Petitioner filed a cross-motion for summary judgment arguing that he has stipulated all of the partnership items adjusted in

the FPAA and is entitled to summary judgment because all of the remaining issues relate to nonpartnership items over which the Court lacks jurisdiction under section 6226(f).[5]  In the alternative, petitioner argues that the valuation misstatement penalties imposed under section 6662(a), (b)(3), (e), and (h) are inapplicable as a matter of law because the penalties do not relate to an error in "valuation" but relate to respondent's determination that Petaluma and/or the transactions it purportedly entered into should be disregarded.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment may be granted where there is no genuine issue of any material fact and a decision may be rendered as a matter of law.  Rule 121(a) and (b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

The parties agree that this case is ripe for summary judgment because both parties raise only questions of law. Petitioner stipulated:  "if the Court determines that it has jurisdiction in this case, petitioner does not intend to contest

---

[5] Petitioner did not file a motion for dismissal because sec. 6226(h) provides that a "decision of the court dismissing the action shall be considered as its decision that the notice of final partnership administrative adjustment is correct".

any of the issues raised in the FPAA other than the issue of whether the valuation misstatement penalty would apply in this case". When a party explicitly states that he does not intend to contest an issue, we have found it appropriate to deem the issue conceded and not require the other party to prove the issue affirmatively. Tan Xuan Bui v. Commissioner, T.C. Memo. 2007-104; DeCaprio v. Commissioner, T.C. Memo. 1996-367. Furthermore, stipulations are treated as conclusive and binding admissions by the parties unless otherwise permitted by the Court. Rule 91(e); Stamos v. Commissioner, 87 T.C. 1451, 1454-1455 (1986). Accordingly, with the exception of the determinations of the valuation penalties, if we find that we have jurisdiction over a determination made in the FPAA, we shall treat the issue as conceded by petitioner, grant respondent's motion for summary judgment on the issue, and deny petitioner's cross-motion for summary judgment on the issue.

Petitioner's primary argument is that all of the adjustments and determinations in the FPAA that petitioner has not conceded are adjustments to the partners' outside bases or are otherwise nonpartnership items that are outside the Court's jurisdiction under section 6226(f). Specifically, petitioner argues that the determinations that Petaluma should be disregarded for tax purposes, that the partners' aggregate outside partnership basis is zero, and that the penalties apply are either nonpartnership

items or not "items" at all. In the alternative, petitioner argues that valuation misstatement penalties are not applicable here.

## I. TEFRA Procedures and Partnership Items

Partnerships do not pay Federal income taxes, but they are required to file annual information returns reporting the partners' distributive shares of tax items. Secs. 701, 6031. The individual partners then report their distributive shares of the tax items on their Federal income tax returns. Secs. 701-704.

To remove the substantial administrative burden occasioned by duplicative audits and litigation and to provide consistent treatment of partnership tax items among partners in the same partnership, Congress enacted the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 401, 96 Stat. 648. See Randell v. United States, 64 F.3d 101, 103 (2d Cir. 1995); H. Conf. Rept. 97-760, at 599-600 (1982), 1982-2 C.B. 600, 662-663.

Under TEFRA, all partnership items are determined in a single partnership-level proceeding. Sec. 6226; see also Randell v. United States, supra at 103. The determination of partnership items in a partnership-level proceeding is binding on the partners and may not be challenged in a subsequent partner-level proceeding. See secs. 6230(c)(4), 7422(h). This prevents the

courts from relitigating the same issues with each of the partners.

After the final partnership-level adjustments have been made, further partner-level actions may be taken to bring the partners' returns into conformity with the determinations made at the partnership level or to address issues that are specific to the partners. If a computational adjustment can be made without making any additional partner-level determinations, the Commissioner directly assesses the changes in the partner's tax liability as a computational adjustment without issuing a notice of deficiency. Sec. 6231(a)(6), (c); N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744 (1987); sec. 301.6231(a)(6)-1T(a), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3840 (Jan. 26, 1999). If the partner believes that the computational adjustment was erroneous, he may bring a claim for refund after payment. Sec. 6230(c). If a partner has an increased liability stemming from an affected item or a computational adjustment that requires a factual determination at the partner level, the normal deficiency procedures outlined in sections 6212 and 6213 apply. Sec. 6230(a); sec. 301.6231(a)(6)-1T(a)(2), Temporary Proced. & Admin. Regs., supra.

In partnership-level proceedings such as the case before us, the Court's jurisdiction is limited by section 6226(f):

> SEC. 6226(f). Scope of Judicial Review.--A court with which a petition is filed in accordance with this

section shall have jurisdiction to determine all <u>partnership items</u> of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, <u>the proper allocation of such items among the partners, and the applicability of any penalty</u>, addition to tax, or additional amount <u>which relates to an adjustment to a partnership item</u>. [Emphasis added.]

Section 6231(a) defines the terms "partnership item", "nonpartnership item", and "affected item":

(3) Partnership item.--The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

(4) Nonpartnership item.--The term "nonpartnership item" means an item which is (or is treated as) not a partnership item.

(5) Affected item.--The term "affected item" means any item to the extent such item is affected by a partnership item.

An "affected item" is by definition not a "partnership item". <u>Ginsburg v. Commissioner</u>, 127 T.C. 75, 79 (2006); see also <u>Dial USA, Inc. v. Commissioner</u>, 95 T.C. 1, 5 (1990).

II.  <u>The Explanation of Items</u>

Petitioner argues that the Court lacks jurisdiction over all of the determinations in the explanation of items.  Petitioner argues that if the Court affirms the various alternative arguments in the explanation of items, this will amount to an advisory opinion because petitioner has stipulated all of the

adjustments to partnership items. See Greene-Thapedi v. Commissioner, 126 T.C. 1, 13 (2006); LTV Corp. v. Commissioner, 64 T.C. 589 (1975).

However, partnership items also affect affected items, which are by definition nonpartnership items and therefore would not be redetermined by the Court in this partnership-level proceeding. See Ginsburg v. Commissioner, supra at 79; Dial USA, Inc. v. Commissioner, supra at 5; sec. 301.6231(a)(3)-1, Proced. & Admin. Regs.; sec. 301.6231(a)(5)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987). Because partnership items include not only the figures reported on a partnership's return but also determinations that may affect nonpartnership items, it is essential to determine all partnership items at the partnership level.

III.  Whether Petaluma and Its Transactions Should Be Disregarded for Tax Purposes

The first determination in the explanation of items is that Petaluma was not a partnership in fact. The second and third determinations in the explanation of items are to the effect that if Petaluma was otherwise a partnership, it had no business purpose other than tax avoidance, lacked economic substance, constituted an economic sham for Federal income tax purposes, and was abusive under section 1.701-2, Income Tax Regs. As a consequence, the FPAA determines that Petaluma and all of the transactions it purportedly engaged in should be disregarded and

that the transactions that Petaluma engaged in should be treated as having been engaged in directly by the partners.  Because all of these determinations have the same consequence, that Petaluma should be disregarded for tax purposes, we address them together.

Section 6233 provides that if a partnership return is filed for a year but it is determined that no partnership exists, the subchapter that governs the procedure for taxing partnership items still applies to the extent provided in the regulations. The regulations provide that the TEFRA provisions will generally continue to apply if a purported partnership files a partnership return.  Sec. 301.6233-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6795 (Mar. 5, 1987).  The regulations further provide that in a partnership-level proceeding the Court may determine whether a "partnership" existed during the year.  Id. Therefore, because Petaluma filed a partnership return for 2000, under section 6233 and the regulations promulgated thereunder the Court has jurisdiction to determine whether to recognize Petaluma as a partnership for tax purposes.  See also Andantech L.L.C. v. Commissioner, 331 F.3d 972, 980-981 (D.C. Cir. 2003), affg. in part and remanding in part T.C. Memo. 2002-97.

Furthermore, the determination of whether a partnership should be disregarded for tax purposes under a legal doctrine such as sham or economic substance is a partnership item. Petitioner argues that the issue of whether Petaluma should be

disregarded for tax purposes as a sham or for lack of economic substance is not a partnership item because: (1) It is not an "item", (2) it is not a determination Petaluma was required to make under subtitle A, and (3) the regulations do not list the question of whether a partnership should be disregarded for tax purposes under one of these doctrines as a partnership item.

A. Whether a Determination Must Be an "Item"

Petitioner argues that when used in the Code in connection with defining tax consequences of various transactions, the term "item" means an item of income, deduction, credit, gain, loss, or basis, or a similar accounting entry. Under petitioner's theory, the determinations made in the explanation of items are not "items" themselves but merely explanations of the numerical adjustments made in the FPAA.

In RJT Inv. X v. Commissioner, 491 F.3d 732, 735 (8th Cir. 2007), the Court of Appeals reasoned that a "partnership item" is defined as: (1) Any item required to be taken into account for the partnership's taxable year under a provision of subtitle A, (2) to the extent the regulations prescribe that the item is more appropriately determined at the partnership level. The court concluded that determinations based on judicial doctrines such as sham may be partnership items. Id. at 735-738; see also Andantech L.L.C. v. Commissioner, supra at 980-982 (affirming this Court's decision in a partnership-level proceeding that the

partnership should be disregarded for tax purposes).  We agree that partnership items may include determinations of whether a partnership should be disregarded for tax purposes as a sham or for lack of economic substance.  Therefore we disagree that the term "partnership item" is defined in the narrow sense that petitioner advocates.

B.  <u>Whether the Determination To Disregard Petaluma Is Required To Be Taken Into Account for Petaluma's Taxable Year Under a Provision of Subtitle A</u>

Petitioner argues that judicial doctrines such as sham or lack of economic substance that address the validity of a partnership are not found in subtitle A, in any part of the Code related to partnerships, or on Form 1065; therefore, a determination that Petaluma is a sham and/or lacks economic substance cannot be a partnership item under section 6231(a)(3).

Respondent argues that the definition of a "partnership item" is not so limited.  Respondent argues that if a partnership is a sham, lacks economic substance, or was formed for tax avoidance purposes, the partnership and/or its transactions are disregarded for tax purposes.  See <u>Andantech L.L.C. v. Commissioner</u>, T.C. Memo. 2002-97.  Consequently, the amount of the partnership's income, credit, gain, loss, deduction, and similar items would be reduced to zero, and these items <u>are</u> required to be taken into account under subtitle A.

While petitioner has stipulated or will not contest most of the adjustments in the FPAA, this does not affect the need to determine whether Petaluma was a sham or lacked economic substance in order to properly account for various tax items under subtitle A. Petitioner may not eliminate our jurisdiction over the determinations in the explanation of items by conceding the adjustments to one or more of the partnership items. See LTV Corp. v. Commissioner, 64 T.C. at 591. Furthermore, as discussed above, a determination whether Petaluma was a valid partnership is not mooted by petitioner's stipulations because a determination of whether Petaluma was a valid partnership may also affect any number of affected items.

RJT Inv. X v. Commissioner, supra, supports respondent's position that the determination of whether a partnership should be disregarded for tax purposes is a partnership item. The court reasoned that the validity of a partnership--in particular, its status as a sham--is a matter that is required to be taken into account under subtitle A because it directly affects many of the components of the partnership's and partners' tax reporting:

> When filling out individual tax returns, the very process of calculating an outside basis, reporting a sales price, and claiming a capital loss following a partnership liquidation presupposes that the partnership was valid.

Id. at 736. Therefore, because the validity of a partnership affects tax items that are required to be taken into account

under subtitle A, the validity of a partnership is also a determination the partnership is required to make.

Petitioner argues that RJT Investments X is distinguishable because in RJT Investments X the record included comprehensive facts sufficient for the court to conclude, as a matter of fact, that the partnership was a sham. Petitioner argues that the court's treatment of that matter as a partnership item was merely dictum rather than a holding because the factual findings were sufficient to eliminate the partners' outside bases.

Petitioner is incorrect. As in this case, the taxpayers in RJT Investments X raised only jurisdictional arguments on appeal and were deemed to have waived any challenges to the sufficiency of the evidence. Id. at 735, 738 n.9. The legal issue in RJT Investments X is the same question that we must decide, and we are persuaded by the decision of the Court of Appeals.

Petitioner also argues that the explanation of items contains various alternative arguments and nothing in subtitle A requires a partnership to affirmatively rebut the myriad potential arguments that the Commissioner might use to attack the validity of a partnership and its transactions. However, petitioner points to no authority, and we know of none, that prohibits an FPAA from asserting alternative arguments for adjusting partnership items.

For the reasons provided in RJT Investments X, we agree with respondent that whether Petaluma is a sham, lacks economic substance, or otherwise should be disregarded for tax purposes is required to be taken into account under subtitle A.  Therefore this requirement is satisfied.

C. Whether the Regulations Prescribe That the Item Is More Appropriately Determined at the Partnership Level

Section 301.6231(a)(3)-1(a), Proced. & Admin. Regs., lists a number of items that constitute "partnership items" but does not explicitly list judicial concepts such as "sham" or "economic substance".  However, section 301.6231(a)(3)-1(b), Proced. & Admin. Regs., provides that the term "partnership item" also includes "the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc."  Because the determination of whether a partnership is a sham or lacks economic substance underlies all of the purported partnership's tax items, it fits squarely within the regulation.  See Gregory v. Helvering, 293 U.S. 465 (1935); Andantech L.L.C. v. Commissioner, T.C. Memo. 2002-97.

Petitioner argues that notwithstanding section 301.6231(a)(3)-1(b), Proced. & Admin. Regs., the validity of Petaluma is more appropriately determined at the partner level because the decision of whether a partnership should be respected

for tax purposes is based on the totality of the facts and circumstances surrounding the transaction. See Falsetti v. Commissioner, 85 T.C. 332, 348 (1985); Salina Pship. L.P. v. Commissioner, T.C. Memo. 2000-352. Petitioner emphasizes that whether economic substance or related judicial doctrines should apply "involves an intensely factual inquiry." Andantech L.L.C. v. Commissioner, T.C. Memo. 2002-97; see also Harris v. Commissioner, 61 T.C. 770, 783 (1974). Therefore, petitioner argues that because the "totality of the facts and circumstances" necessarily includes some facts not available at the partnership level, a determination of sham or lack of economic substance cannot be a partnership item. In particular, petitioner argues that the determination of whether a partnership is recognized for substantive tax law purposes depends in part on the intent of the partners. See Andantech L.L.C. v. Commissioner, 331 F.3d at 978. Petitioner argues that any determination that requires a partner-level analysis is a nonpartnership item. See N.C.F. Energy Partners v. Commissioner, 89 T.C. at 744; Allen Family Foods, Inc. v. Commissioner, T.C. Memo. 2000-327. Therefore, petitioner argues that if the Court decides that the validity of Petaluma is an "item", it must be an affected item.

We first note that Andantech L.L.C. v. Commissioner, 331 F.3d 972 (D.C. Cir. 2003), upon which petitioner relies, ultimately affirmed the Court's finding in Andantech L.L.C. v.

Commissioner, T.C. Memo. 2002-97, a partnership-level proceeding, that the partnership at issue should be disregarded for tax purposes. See also ASA Investerings Pship. v. Commissioner, T.C. Memo. 1998-305, affd. 201 F.3d 505 (D.C. Cir. 2000). Petitioner argues that Andantech L.L.C. v. Commissioner, 331 F.3d 972 (D.C. Cir. 2003), and ASA Investerings Pship. v. Commissioner, 201 F.3d 505 (D.C. Cir. 2000), do not help respondent's position because the courts in those cases did not explicitly address whether "sham" or "lack of economic substance" are partnership items but affirmed the Tax Court's decisions after making a factual finding. We find that these cases do support respondent's position and implicit in the analysis of the Court's decisions by the Courts of Appeal is an analysis of jurisdiction.

We also disagree that the determination whether a partnership is a sham or lacks economic substance is more appropriately determined at the partner level. The validity of the partnership affects all partners; therefore, partner-level determinations of validity would defy TEFRA's purpose of preventing inconsistent treatment between partners. See RJT Inv. X v. Commissioner, supra at 737. Furthermore, "Congress vested in the Secretary of the Treasury, not in the federal courts, the authority to weigh and decide what items are most suitably ascertained at the partnership level." Id. at 738 n.8. As discussed above, we hold that section 301.6231(a)(3)-1(b),

Proced. and Admin. Regs., encompasses determinations whether a partnership is a sham or lacks economic substance.

For the reasons discussed above, we hold that the determination whether Petaluma is a sham, lacks economic substance, or otherwise should be disregarded for tax purposes is a partnership item over which we have jurisdiction. Accordingly, we shall grant respondent's motion and deny petitioner's cross-motion for summary judgment on this issue.

IV. Outside Basis

The FPAA adjusted Petaluma's aggregate outside basis from $24,943,505 to zero. In the explanation of items, respondent also determined that neither Petaluma nor its partners had established that the partners had outside bases greater than zero. Petitioner argues the Court lacks jurisdiction under section 6226(f) to redetermine the partners' outside bases in Petaluma because in petitioner's view, outside basis is not a partnership item within the definition of section 6231(a)(3).

Respondent acknowledges that as a general matter the Court lacks jurisdiction in a partnership-level proceeding to calculate outside basis. A number of our opinions indicate that, with certain exceptions not present in this case, a partnership is not required to determine its partners' outside bases, nor do the regulations expressly provide that outside basis is more appropriately determined at the partnership level than the

partner level.  See <u>Domulewicz v. Commissioner</u>, 129 T.C. 11, 20 (2007); <u>Ginsburg v. Commissioner</u>, 127 T.C. at 82; <u>Dial USA, Inc. v. Commissioner</u>, 95 T.C. at 4;[6] <u>Gustin v. Commissioner</u>, T.C. Memo. 2002-64.[7]  However, respondent argues that the Court has jurisdiction to determine that outside basis is zero if a partnership is disregarded for tax purposes because there can be no outside basis in a disregarded partnership.

Petitioner argues that outside basis cannot be a partnership item regardless of whether the Court disregards a partnership for tax purposes because partnerships are not required to take outside basis into account under subtitle A.  In <u>Dakotah Hills Offices Ltd. Pship. v. Commissioner</u>, T.C. Memo. 1996-35, and

---

[6] The subch. S audit and litigation provisions were repealed by the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1307(c)(1), 110 Stat. 1781, applicable to tax years beginning after Dec. 31, 1996, <u>id.</u> sec. 1317(a), 110 Stat. 1787. The definition of a subch. S item in former sec. 6245 was parallel to the definition of a partnership item in sec. 6231(a)(3).

[7] The Court noted in dicta in <u>Countryside Ltd. Pship. v. Commissioner</u>, T.C. Memo. 2008-3 n.4, that under the circumstances of that case (where the jurisdictional issue was raised by the Commissioner, who had alleged in the FPAA gain to the partners in excess of their zero basis, and where basis was entirely determinable from partnership items), it had jurisdiction to determine the partners' outside bases during a partnership-level proceeding.

Similarly, in <u>Nussdorf v. Commissioner</u>, 129 T.C. 30, 37, 44 (2007), the Court stated that determinations in notices of deficiency issued to the partners were partnership items, including a determination that one of the partners failed to establish that it had an outside basis greater than zero. However, this was consistent with the parties' agreement.

Olsen-Smith, Ltd. v. Commissioner, T.C. Memo. 2005-174, we held that the critical factor is whether the item is required to be taken into account by the partnership. See also Dial USA, Inc. v. Commissioner, supra at 4.

Furthermore, regardless of whether Petaluma should be disregarded for tax purposes, petitioner points out that the regulations do not definitively provide that outside basis is an item that is more appropriately determined at the partnership level than the partner level. See sec. 301.6231(a)(3)-1, Proced. & Admin. Regs. By contrast, section 301.6231(a)(5)-1T(b), Temporary Proced. & Admin. Regs., supra, provides that "A partner's basis in his interest in the partnership is an affected item to the extent it is not a partnership item." This definition indicates that outside basis can be a partnership item in certain circumstances, such as where a partnership makes an election under section 754 and must calculate a partner's outside basis to determine its own basis in its assets under section 734(b), see sec. 301.6231(a)(3)-1(a)(3), Proced. & Admin. Regs., or where one partnership owns an interest in a second partnership and must determine its outside basis in the second partnership. However, neither situation is present here.

This case presents a situation that is different from one where the calculation of a partner's outside basis requires determinations to be made at the partner level. If there is no

partnership, there will be no need to make further factual determinations at the partner level.  If a purported partner is determined not to have had an interest in a partnership, no facts available at the partner level will establish that the partner had an outside basis in the partnership.

The regulations indicate that in a situation where no partner-level determinations are necessary to determine outside basis, this determination may be a partnership item.  Section 301.6231(a)(3)-1(c)(2) and (3), Proced. & Admin. Regs., provides that partnership items include determinations that relate to contributions and distributions to the extent that those determinations do not require information that is outside the Court's jurisdiction.  <u>Allen Family Foods, Inc. v. Commissioner</u>, T.C. Memo. 2000-327.  Outside basis is related to a partner's contributions and share of distributions.  Secs. 722, 733.  If a partnership is disregarded for tax purposes or a partner's participation in the partnership is disregarded, the Court may determine that the partner's outside basis is zero without requiring a partner-level determination because there can be no adjusted basis in a disregarded partnership.  The Court will not turn a blind eye to the fact that a partner has no outside basis when this is a conclusion that stems directly from the Court's determination that a partnership or a partner's participation in the partnership should be disregarded.

As discussed above, we have jurisdiction to determine whether Petaluma should be disregarded for tax purposes. Because petitioner will not contest this determination other than on jurisdictional grounds, the effect of petitioner's concession is that Petaluma will be disregarded for tax purposes. There can be no basis in a disregarded entity. If the partners have no outside bases, we may treat their outside bases as zero. See Rybak v. Commissioner, 91 T.C. 524, 566-567 (1988); Zfass v. Commissioner, T.C. Memo. 1996-167, affd. 118 F.3d 184 (4th Cir. 1997). Accordingly, we shall grant respondent's motion and deny petitioner's cross-motion for summary judgment on this issue.

V. Penalties

A. Jurisdiction

The ninth determination states that the adjustments of Petaluma's partnership items are attributable to a tax shelter for which no substantial authority or reasonable basis has been established. Furthermore, it determines that all of the underpayments of tax resulting from those adjustments of partnership items are attributable at a minimum to: (1) Gross or substantial valuation misstatements penalized under section 6662(a), (b)(3), (e), and (h); (2) negligence or disregard of rules or regulations penalized under section 6662(a), (b)(1), and (c); or (3) substantial understatements of income tax penalized under section 6662(a), (b)(2), and (d).

A taxpayer is liable for an accuracy-related penalty of 20 percent of any part of an underpayment attributable to, in pertinent part, a substantial valuation misstatement, negligence or disregard of rules or regulations, or a substantial understatement of income tax.  Sec. 6662(a) and (b)(1), (2), and (3).

As part of the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1238(a), 111 Stat. 1026, Congress amended sections 6221 and 6226(f) to provide that the applicability of penalties that relate to adjustments to partnership items is determined at the partnership level.  Before the amendment, the applicability of all penalties was determined at the partner level because penalties are affected items.  See N.C.F. Energy Partners v. Commissioner, 89 T.C. 741 (1987).

Section 6221 now provides:  "the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item * * * shall be determined at the partnership level."

Petitioner acknowledges that under section 6226(f) the Court has jurisdiction to determine the "applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." (Emphasis added.) However, petitioner argues that the penalties determined in the FPAA are attributable to adjustments to affected items, not partnership

items, and are accordingly outside the Court's jurisdiction in this partnership-level proceeding.

Respondent argues that even if the penalties are directly attributable to adjustments to affected items, those items relate to partnership items at least indirectly, and therefore they are within the Court's jurisdiction.  For example, if Petaluma is disregarded for tax purposes, RTV and RSV will be found to have underpayments due to the sale of Scient stock that took basis by reference to a partnership disregarded for tax purposes. Petitioner counters that while the penalties may indirectly relate to partnership items, the statute provides the Court with jurisdiction only over penalties that directly relate to partnership items.

Congress expanded the Court's jurisdiction in partnership-level proceedings when it amended sections 6221 and 6226(f), and the legislative history accompanying those amendments suggests that Congress intended the Court's jurisdiction over penalties to be interpreted broadly:

### Reasons for Change

Many penalties are based upon the conduct of the taxpayer. With respect to partnerships, the relevant conduct often occurs at the partnership level. In addition, applying penalties at the partner level through the deficiency procedures following the conclusion of the unified proceeding at the partnership level increases the administrative burden on the IRS and can significantly increase the Tax Court's inventory.

Explanation of Provision

The bill provides that <u>the partnership-level proceeding is to include a determination of the applicability of penalties at the partnership level</u>. However, the provision allows partners to raise any partner-level defenses in a refund forum. [H. Rept. 105-148, at 594 (1997), 1997-4 C.B. (Vol. 1) 319, 916; emphasis added.]

The conference report suggests that the words "relates to" in sections 6221 and 6226(f) should be read expansively.

We applied the amended versions of sections 6221 and 6226(f) in <u>Fears v. Commissioner</u>, 129 T.C. 8, 10 (2007), <u>Domulewicz v. Commissioner</u>, 129 T.C. at 23, and <u>Bedrosian v. Commissioner</u>, T.C. Memo. 2007-376. These cases also indicate that the words "relates to" should be read expansively. We hold that the FPAA determined that the accuracy-related penalties apply as a result of the determination that Petaluma should be disregarded for tax purposes and this relation suffices to vest the Court with jurisdiction over the penalties.[8]

B.  The Valuation Misstatement Penalty

A "substantial valuation misstatement" occurs if the value or the adjusted basis of any property claimed on any return of tax is 200 percent or more of the correct amount. Sec.

---

[8] In this case we do not make partner-level determinations for purposes of deciding the applicability of penalties at the partnership level. We do not address in this case whether we have jurisdiction in a partnership-level proceeding to determine affected items if the resolution of such items is required to finally determine the amount of a penalty.

6662(e)(1)(A). The penalty is increased to 40 percent if the underpayment of tax is the result of a gross valuation misstatement, which is the valuation misstatement determined under section 6662(e) after substituting "400 percent" for "200 percent". Sec. 6662(h)(2)(A).

Respondent argues that while the amount of the penalty must be determined at the partner level, the determination of whether there is a substantial valuation misstatement should be determined at the partnership level. Respondent argues that the valuation misstatement penalty applies in this case because the determinations made in the FPAA regarding Petaluma's partnership items cause the bases of its partners' interests in the partnership to be reduced to zero instead of $25 million (collectively) as claimed. While the underpayments of tax the partners were required to show on their returns were due to the overstatement of each partner's Scient stock, under section 732(b) the partners determined their adjusted bases in the Scient stock by reference to their outside bases in Petaluma before its liquidation.

As discussed above, if a partnership is disregarded for tax purposes the Court has jurisdiction to treat the partners' outside bases as zero. If a property has a basis of zero, any basis claimed above that will be a valuation overstatement and the penalty will apply. Rybak v. Commissioner, 91 T.C. at 566-

567; <u>Zfass v. Commissioner</u>, T.C. Memo. 1996-167; <u>Illes v. Commissioner</u>, T.C. Memo. 1991-449, affd. 982 F.2d 163 (6th Cir. 1992).

Petitioner argues that if the Court has jurisdiction over the accuracy-related penalties under section 6662, respondent has not met his burden of production under section 7491(c). Petitioner stipulated that he is contesting only the valuation misstatement penalty, and we treat this stipulation as binding on petitioner.  See Rule 91(e); <u>Stamos v. Commissioner</u>, 87 T.C. at 1454-1455.  Therefore, we treat petitioner's argument as only relating to the valuation misstatement penalties and not challenging the accuracy-related penalty on the bases of negligence and substantial understatement of income tax. Petitioner argues that respondent has not satisfied his burden of production because he is asserting the penalties against the individual partners, not the partnership.

Respondent argues that section 7491(c) does not apply because that section applies only in proceedings "with respect to the liability of any <u>individual</u> for any penalty", and Petaluma is not an individual. (Emphasis added.)  See <u>Santa Monica Pictures, LLC v. Commissioner</u>, T.C. Memo. 2005-104.  Even if section 7491(c) does apply, we find that respondent has satisfied his burden of production.  As discussed above, petitioner does not dispute, except on jurisdictional grounds, that Petaluma lacked

economic substance and the partners' outside bases are zero. Therefore, we find that respondent has met the threshold requirement to support his determination that the gross valuation misstatement penalty applies.

Petitioner next argues that the valuation misstatement penalties are inapplicable as a matter of law. According to petitioner, the overstatement of the partners' outside bases resulted from respondent's determinations that Petaluma and/or the transactions it purportedly entered into should be disregarded, not from an erroneous valuation. Petitioner argues that this penalty was not aimed at, and should not be imposed on, incorrect application or interpretation of the law. As support, petitioner points to a statement in the report prepared by the staff of the Joint Committee on Taxation, which accompanied the enactment of section 6659, the predecessor to section 6662(b)(3): "The Congress believed that a specific penalty was needed to deal with various problems related to the valuation of property." Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 332 (J. Comm. Print 1981).

Petitioner argues that we should follow the approach taken by the Court of Appeals for the Fifth Circuit, that the valuation overstatement penalty (the predecessor to the valuation misstatement penalty) is not appropriate when the overstatement of basis results from a transaction that has been disregarded in

its entirety.  See <u>Heasley v. Commissioner</u>, 902 F.2d 380, 383
(5th Cir. 1990), revg. T.C. Memo. 1988-408.

Respondent acknowledges that the Court of Appeals for the
Fifth Circuit has taken the position that valuation overstatement
penalties do not apply when the overstatement stems from
disregard of a transaction.  However, respondent argues that we
should instead follow the approach we took in <u>Zfass v.
Commissioner</u>, <u>supra</u>, that "When a transaction lacks economic
substance, the correct basis is zero; any amount claimed is a
valuation overstatement" that may be subject to a penalty for a
valuation overstatement.

Under <u>Golsen v. Commissioner</u>, 54 T.C. 742, 757 (1970), affd.
445 F.2d 985 (10th Cir. 1971), the Court will follow the decision
of the Court of Appeals to which a case is appealable if the
Court of Appeals has already decided the issue.  However, we will
give effect to our own views in cases appealable to courts that
have not yet decided the issue.  <u>Id.</u>  Because Petaluma had no
principal place of business at the time the petition was filed,
this case may be appealable to the Court of Appeals for the
District of Columbia Circuit.  Sec. 7482(b)(1).  The Court of
Appeals for the District of Columbia Circuit has not yet ruled on
the issue of whether the valuation misstatement penalty applies
to underpayments attributable to overstated bases in property

involved in transactions that are shams and/or lack economic substance.

The Courts of Appeals for the Second, Third, Fourth, Sixth, and Eighth Circuits have affirmed this Court's imposition of the valuation overstatement or misstatement penalty where the underpayment results from a sham transaction lacking economic substance. Merino v. Commissioner, 196 F.3d 147, 158-159 (3d Cir. 1999), affg. T.C. Memo. 1997-385; Zfass v. Commissioner, 118 F.3d at 191; Illes v. Commissioner, 982 F.2d at 167; Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991), affg. T.C. Memo. 1989-684; Massengill v. Commissioner, 876 F.2d 616, 619-620 (8th Cir. 1989), affg. T.C. Memo. 1988-427. Respondent argues that this approach is consistent with section 1.6662-5(g), Income Tax Regs., which provides:

> (g) Property with a value or adjusted basis of zero.--The value or adjusted basis claimed on a return of any property with a correct value or adjusted basis of zero is considered to be 400 percent or more of the correct amount. There is a gross valuation misstatement with respect to such property, therefore, and the applicable penalty rate is 40 percent.

In keeping with the decisions of the majority of the Courts of Appeals and our own prior decisions, we conclude that the gross valuation penalty applies when the adjusted basis of property is reduced to zero because a transaction was disregarded as a sham or lacking economic substance and the taxpayer claims an adjusted basis in the property of a greater amount.

Petitioner next argues that the valuation penalty is not appropriate when there is some other ground for disallowing the entire portion of the disputed deduction and that this rule applies here. See Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), affg. T.C. Memo. 1988-416. Petitioner argues that the facts of this case are analogous to those in Weiner v. United States, 389 F.3d 152 (5th Cir. 2004). In Weiner, the taxpayers challenged the interest charged against them for "tax-motivated transactions" pursuant to section 6621(c) (now repealed). Id. at 153. Section 6621(c) imposed an interest rate of 120 percent of the statutory rate on "any substantial underpayment attributable to tax motivated transactions". Included in the definition of "tax motivated transaction" in section 6621(c)(3)(A)(v) was any "sham or fraudulent transaction". In the FPAAs, the Internal Revenue Service (IRS) asserted several bases for disallowing certain deductions, one of which was "sham or fraudulent transaction". Id. at 159-160. However, because the taxpayers settled with the IRS, there was never any need for a court to examine the IRS's alternative bases for disallowance or make factual findings about their application. Id. at 160. The court concluded that because the FPAA listed several independent reasons for disallowing the taxpayers' deductions, some of which were not related to tax-motivated transactions, there was no way to determine without additional superfluous litigation whether

the taxpayers' underpayments were attributable to a tax-motivated transaction.  Id. at 162.

The court in Weiner relied partially on Todd v. Commissioner, 862 F.2d 540 (5th Cir. 1988), affg. 89 T.C. 912 (1987).  In Todd v. Commissioner, supra at 541, the dispute was over the application of the valuation overstatement penalty under former section 6659(a).  The court found that the taxpayers' liability was attributable to the fact that because they did not place their property in service before a certain date, the valuation of the property had no impact on the tax actually owed. Id. at 543.

Petitioner argues that if we find that all of the determinations in the explanation of items are partnership items, it will be impossible to determine which of the determinations provide the grounds for imposing the valuation misstatement penalty.  While a determination that Petaluma was a sham and/or lacked economic substance would cause the partners' outside bases in Petaluma to be reduced to zero, many of the other determinations would have the same effect.  According to petitioner, because it is initially impossible to tell under respondent's theory why the partners' outside bases are being disallowed, under Weiner and Todd, the Court will not be able to conclude that the penalty should be imposed because of a gross valuation misstatement.

Respondent acknowledges that the Court does not apply the valuation misstatement penalty in cases where the deduction or credit is disallowed for reasons other than the fact that the value or basis of the property was inflated. Todd v. Commissioner, 89 T.C. 912 (1987); Gainer v. Commissioner, T.C. Memo. 1988-416. However, respondent argues that unlike the situations in Todd and Gainer, in this case respondent's alternative arguments all affect the partners' bases in the partnership. Under any of respondent's alternative arguments the penalty is imposed on the same determination--the misstatement of the partners' outside bases. We agree with respondent that Todd and Gainer are for that reason distinguishable from this case.

Petitioner finally argues that the valuation misstatement penalty is improper because the factual record does not support respondent's arguments that Petaluma and the transactions in which Petaluma and its partners engaged were shams and/or lacked economic substance. To the contrary, petitioner argues that the exhibits respondent submitted, particularly a memorandum describing the offering of interests in Petaluma to potential investors, prove that Petaluma was a valid partnership that engaged in real transactions.

Petitioner argues that while he stipulated that he would challenge jurisdiction only over the disputed items and the propriety of imposing the valuation penalty, he has not conceded

the valuation penalty just because the FPAA determines that Petaluma was a sham and/or lacked economic substance.  Petitioner preserved the right to argue that sham and lack of economic substance are not partnership items and argues that this right necessarily includes the right to argue whatever is necessary to mount that challenge.  Petitioner argues that it is proper to argue that the factual record supports a finding that Petaluma engaged in real transactions with a real business purpose and, therefore, respondent's sham or lack of economic substance argument is not supported by the record.

We agree that petitioner preserved the right to argue that sham and lack of economic substance are not partnership items.  However, this is not the same as preserving the right to challenge on factual grounds respondent's position that Petaluma was a sham and lacked economic substance.  Petitioner stipulated:

> 2.  If the Court determines that it has jurisdiction in this case, petitioner stipulates that he does not intend to call any witnesses or offer any evidence in this proceeding, or otherwise contest the determinations made in the FPAA other than the determination that the valuation misstatement penalty imposed by I.R.C. § 6662(a), (b)(3), (e), and (h) applies to any underpayment resulting from the adjustments to partnership items.

We construe this stipulation to mean that petitioner did not intend to challenge on factual grounds the FPAA's determination that Petaluma was a sham or otherwise lacked economic substance. The stipulation means that petitioner did intend to challenge the

valuation misstatement penalty but only on the ground that it is inapplicable to the adjustments to partnership items stated in the FPAA, not on the ground that the adjustments to partnership items were incorrect. It is incongruous that petitioner would have stipulated that he would not call any witnesses or offer any evidence if he intended to prove that Petaluma should be respected for tax purposes in order to dispute the applicability of the valuation misstatement penalties. This stipulation is binding on the parties, and we do not find that justice requires the Court to permit petitioner to qualify, change, or contradict it. See Rule 91(e); Stamos v. Commissioner, 87 T.C. at 1454-1455. Therefore, we hold that petitioner is precluded from challenging this penalty on the merits during this proceeding. However, if the partners have any personal defenses that they wish to assert against the valuation misstatement penalty, they may assert those defenses in a refund forum. Sec. 6230(c)(4).

On the basis of the foregoing, we shall grant respondent's motion for summary judgment and deny petitioner's cross-motion for summary judgment on this issue. Therefore, we need not address whether the accuracy-related penalties for negligence or understatement of income tax apply.

VI. The Remaining Determinations

As discussed above, petitioner argues that the Court lacks jurisdiction over all of the determinations in the explanation of

items.  However, with the exception of the determinations already discussed, petitioner makes no specific arguments regarding whether the remaining determinations are partnership items. Furthermore, given our holdings that Petaluma should be disregarded for tax purposes and the partners have no outside bases, the remaining issues are moot and unnecessary to decide to support a holding for respondent.  Accordingly, we shall not address whether the remaining determinations in the explanation of items are partnership items.

Based on the foregoing,

An appropriate order and decision will be entered.

APPENDIX

The explanation of items in Exhibit A to the FPAA issued to petitioner made the following additional determinations:

1.  It is determined that neither Petaluma FX Partners, LLC nor its purported partners have established the existence of Petaluma FX Partners, LLC as a partnership as a matter of fact.

2.  Even if Petaluma FX Partners, LLC existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners.

    The formation of Petaluma FX Partners, LLC, the acquisition of any interest in the purported partnership by the purported partner, the purchase of offsetting options, the transfer of offsetting options to a partnership in return for a partnership interest, the purchase of assets by the partnership, and the distribution of those assets to the purported partners in complete liquidation of the partnership interests, and the subsequent sale of those assets to generate a loss, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the partnership and the transactions described above shall be disregarded in full and any purported losses resulting from these transactions are not allowable as deductions for federal income tax purposes.

3.  It is determined that Petaluma FX Partners, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year 2000 a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:

    a.  the Petaluma FX Partners, LLC is disregarded and that all transactions engaged in by the purported partnership are treated as engaged in directly by its purported partners. This includes the determination that the assets purportedly acquired

by Petaluma FX Partners, LLC, including but not limited to foreign currency options, were acquired directly by the purported partners.

b.   the foreign currency option(s), purportedly contributed to or assumed by Petaluma FX Partners, LLC, are treated as never having been contributed to or assumed by said partnership and any gains or losses purportedly realized by Petaluma FX Partners, LLC on the option(s) are treated as having been realized by its partners.

c.   the purported partners of Petaluma FX Partners, LLC should be treated as not being partners in Petaluma FX Partners, LLC.

d.   contributions to Petaluma FX Partners, LLC will be adjusted to reflect clearly the partnership's or purported partners' income.

4.   It is determined that the obligations under the short positions (written call options) transferred to Petaluma FX Partners, LLC constitute liabilities for purposes of Treasury Regulation §1.752-6T, the assumption of which by Petaluma FX Partners, LLC shall reduce the purported partners' bases in Petaluma FX Partners, LLC in the amounts of $18,043,140 and $6,900,365 for Ronald Thomas Vanderbeek and Ronald Scott Vanderbeek, respectively, but not below the fair market value of the purported partnership interest.

5.   It is determined that neither Petaluma FX Partners, LLC nor its purported partners entered into the option(s) positions or purchase [sic] the foreign currency or stock with a profit motive for purposes of § 165(c)(2).

6.   It is determined that, even if the foreign currency option(s) are treated as having been contributed to Petaluma FX Partners, LLC, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party.  Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partners and Petaluma FX Partners, LLC.  Consequently, any corresponding claimed increases in the outside basis in Petaluma FX Partners, LLC resulting from the contributions of the foreign currency option(s) are disallowed.

7.   It is determined that the adjusted bases of the long call positions (purchased call options), zero coupon notes, and other contributions purportedly contributed by the partners to Petaluma FX Partners, LLC has not been established under I.R.C. § 723.  It is consequently determined that the partners of Petaluma FX Partners, LLC have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

8.   It is further determined that, in the case of a sale, exchange, or liquidation of Petaluma FX Partners, LLC partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for purposes of determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest.

9.   Accuracy-Related Penalties

It is determined that the adjustments of partnership items of Petaluma FX Partners, LLC are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions.  In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded [sic] rules or regulations.  There has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply.  It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Petaluma FX Partners, LLC.  The penalty shall be imposed on the components of underpayment as follows:

A.   a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a),

6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

B.   a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

C.   a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D.   a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.