OPINION Haines, Judge: This case is before the Court on respondent’s motion and petitioner’s cross-motion for partial summary judgment filed pursuant to Rule 121.[1] The issues are: (1) Whether the effective date of section 6707A precludes application of section 6501(c)(10) to the transaction at issue; (2) whether the transaction at issue is a listed transaction; and (3) whether the period of limitations for assessment of tax resulting from the adjustment of partnership items with respect to the transaction at issue is open for 2001 under section 6501(c)(10). Background BLAK Investments (the partnership) is a California general partnership created by Robert and Lori Manroe (the Manroes). The Manroes are partners of the partnership as are two trusts created by the Manroes for the benefit of their children. The petition has been brought by Robert and Lori Manroe, as trustees of the Kyle W. Manroe Trust, tax matters partner of the partnership. I. The Transaction at Issue On December 4, 2001, the Manroes as trustees of the Manroe Family Trust opened an account with A.G. Edwards & Sons, Inc. On December 10, 2001, the Manroes deposited $825,000 into the Manroe Family Trust account. On December 12, 2001, the Manroes, through the Manroe Family Trust Account, borrowed Treasury notes maturing on November 15, 2006, with a maturity value of $6,815,000. The Treasury notes were then sold on the open market for $5,481,713; i.e., the Treasury notes were sold short.[2] Of the proceeds, $2,491,233 was allocated to Mr. Manroe and $2,990,480 was allocated to Ms. Manroe. On December 12, 2001, the Manroes contributed the short sale proceeds, the $825,000 previously deposited into the Manroe Family Trust account, and the obligation to cover the short sale to the partnership in exchange for a combined 95.2964-percent partnership interest. The two trusts for the children each contributed $20,000 in exchange for respective 2.3518-percent partnership interests. Mr. Manroe reported a $2,866,688 capital contribution to the partnership, of which $2,491,233 was proceeds from the short sale. Ms. Manroe reported a $3,440,025 capital contribution to the partnership, of which $2,990,480 was proceeds from the short sale. Neither of their contributions was reduced by the partnership’s obligation to cover the short sale. On December 28, 2001, the partnership redeemed Mr. Manroe’s partnership interest for $380,988.[3] Of that amount, Mr. Manroe received $330,988 and 82,645 Swiss francs having a fair market value of $50,000. On December 28, 2001, the partnership redeemed Ms. Manroe’s partnership interest for $457,185. That amount did not include any foreign currency. On December 31, 2001, Mr. Manroe converted his 82,645 Swiss francs into U.S. dollars in the amount of $45,931. On January 11, 2002, the partnership covered the short sale by purchasing Treasury notes with a face value of $6,815,000 maturing on November 16, 2006, for $5,600,567. II. The Manroes’ Position on the Tax Consequences of the Transaction The Manroes claim that upon making their initial contributions to the partnership their total basis in their partnership interests was $6,306,713, equal to the total short sale proceeds of $5,481,713 and the $825,000 cash. See sec. 722. The Manroes took the position that the obligation to cover the short sale was not a liability for purposes of section 752(b). Mr. Manroe claims that when the partnership redeemed his partnership interest, he recognized no gain or loss because the money distributed did not exceed his basis in the partnership. See sec. 731(a). He claims that his basis in the Swiss francs became $2,585,700; i.e., his total basis in the partnership interest less the cash distributed. See sec. 732(b). Mr. Manroe further claims that when he converted his Swiss francs into U.S. dollars he recognized an ordinary loss of $2,539,769. The purported loss was claimed on Schedule E, Supplemental Income and Loss, of the Manroes’ joint 2001 Form 1040, U.S. Individual Income Tax Return. The loss was reported as being from “Culebra Trading Partners, Ltd.”, although it was attributable to the transaction described above. Ms. Manroe claims that when the partnership redeemed her partnership interest, she recognized a short-term capital loss of $2,982,840, equal to her basis less the amount of money received. See secs. 731(a)(2), 741. The short-term capital loss was claimed on Schedule D, Capital Gains and Losses, of the Manroes’ 2001 Form 1040. The claimed loss offset $1,474,391 of short-term capital gains for 2001. The Manroes claimed a $458,190 carryover loss on their 2002 return.[4] Neither the partnership nor the Manroes attached a disclosure statement to its or their 2001 return. They did not file a copy of a disclosure statement with respondent’s Office of Tax Shelter Analysis. No material adviser provided respondent with information regarding the partnership’s or the Manroes’ participation in the transaction. See sec. 6112. III. Procedural History On October 13, 2006, respondent issued the partnership a notice of final partnership administrative adjustment (fpaa). Respondent determined that the partnership was a sham, was formed and availed of solely for the purpose of overstating the bases of partnership interests, and lacked economic substance. Respondent contends that the consequence of these determinations, if they are sustained, would be the dis-allowance of the losses the Manroes claimed on their 2001 and 2002 joint returns and imposition of accuracy-related penalties determined at the partnership level upon the partners. See sec. 6221. The tax matters partner timely petitioned the Court for review of the FPAA, asserting among other things that the statute of limitations bars the determination of a liability with respect to partnership items or affected items for 2001. Respondent, in his answer, asserted that section 6501(c)(10) applies to the transaction because it constituted a listed transaction requiring disclosure. Petitioner denied the applicability of section 6501(c)(10) in its reply. On November 30, 2007, the Court filed respondent’s motion for partial summary judgment on the statute of limitations issue. On March 10, 2008, the Court filed petitioner’s cross-motion for partial summary judgment on the same issue. A hearing on the motions was held in San Diego, California. Discussion I. The Period of Limitations for Partnerships and Their Partners Generally Under the general rule set forth in section 6501(a), the Internal Revenue Service (IRS) is required to assess tax (or send a notice of deficiency) within 3 years after a Federal income tax return is filed. In the case of a tax imposed on partnership items, section 6229 sets forth special rules to extend the period of limitations prescribed by section 6501 with respect to partnership items or affected items. See sec. 6501(n)(2); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 540-543 (2000). Section 6229 provides in pertinent part: SEC. 6229. PERIOD OF LIMITATIONS FOR MAKING ASSESSMENTS. (a) GENERAL Rule. — Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of— (1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year (determined without regard to extensions). Section 6229 supplements section 6501. It is not a separate statute of limitations for assessments attributable to partnership items. AD Global Fund, LLC v. United States, 481 F.3d 1351 (Fed. Cir. 2007); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra at 545. In Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra at 539, the Court analyzed sections 6229 and 6501 as applicable to an FPAA. The Court stated: The Internal Revenue Code prescribes no period during which TEFRA partnership-level proceedings, which begin with the mailing of the notice of final partnership administrative adjustment, must be commenced. However, if partnership-level proceedings are commenced after the time for assessing tax against the partners has expired, the proceedings will be of no avail because the expiration of the period for assessing tax against the partners, if properly raised, wall bar any assessments attributable to partnership items. [Id. at 534-535.] See AD Global Fund, LLC v. United States, supra; G-5 Inv. Pship. v. Commissioner, 128 T.C. 186 (2007). Under section 6229(d) the mailing of an FPAA suspends the running of both 3-year periods — the section 6501(a) period and the section 6229(a) period. See Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra at 552-553. The suspension is for the period during which an action for judicial review of the FPAA may be brought (and, if an action is brought, until the decision of the court has become final) and for 1 year thereafter. Sec. 6229(d). The Manroes filed their 2002 return on October 15, 2003. The FPAA was issued on October 13, 2006. Petitioner concedes that pursuant to section 6501(a) the period for assessment of tax attributable to partnership items for the Manroes’ 2002 tax year was open when the FPAA was issued. The Manroes filed their 2001 return on October 15, 2002, more than 3 years before the issuance of the FPAA. Therefore, under the general rule of section 6501(a) the Manroes contend that the 2001 tax year has closed. However, respondent argues that the period for assessment of tax attributable to partnership items for 2001 is open under section 6501(c)(10) with respect to a listed transaction if the taxpayer has not made the requisite disclosure of his participation in the listed transaction. Neither party disputes our jurisdiction over this issue, but we shall examine it nonetheless.- Section 6226 provides in pertinent part: SEC. 6226. JUDICIAL REVIEW OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENTS. (c) PARTNERS Treated AS PARTIES. — If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year— (1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and (2) the court having jurisdiction of such action shall allow each such person to participate in the action. (d) Partner Must Have Interest in Outcome.— (1) In order to be party to action. — Subsection (c) shall not apply to a partner after the day on which— (A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, or (B) the period within which any tax attributable to such partnership items may be assessed against that partner expired. Notwithstanding subparagraph (B), any person treated under subsection (c) as a party to an action shall be permitted to participate in such action (or file a readjustment petition under subsection (b) or paragraph (2) of this subsection) solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, and the court having jurisdiction of such action shall have jurisdiction to consider such assertion. In PCMG Trading Partners XX, L.P. v. Commissioner, 131 T.C. 206, 213 n.9 (2008), the Court noted that we have the authority to determine whether partner years are open to assessment for any period in dispute. Specifically, we stated: Generally the Court’s jurisdiction in a partnership proceeding is restricted to determining “partnership items”. Sec. 6226(f); Petaluma FX Partners, LLC v. Commissioner, 131 T.C. 84, 91 (2008). However, our jurisdiction over whether the period of limitations has expired as to individual partners presents an exception since the expiration of the period of limitations can depend on facts that are peculiar to the individual partners. See Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533 (2000), appeal dismissed and remanded 249 F.3d 175 (3d Cir. 2001). * * * In Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra, the Court determined that section 6226 enabled the partners in a partnership action to assert that the period of limitations for assessing any tax attributable to partnership items had expired and that the Court had jurisdiction to decide whether that assertion was correct. As we observed therein: Congress recognized that the periods for assessing tax against individual partners may vary from partner to partner and specifically provided that an individual partner will be permitted to participate as a party in the partnership proceeding “solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person”. * * * [Id. at 546 (citing section 6626(d)(1)(B)).] In Curr-Spec Partners, LP v. Commissioner, T.C. Memo. 2007-289, affd. 579 F.3d 391 (5th Cir. 2009), the Commissioner issued an FPAA for the taxable year 1999, conceded that the assessment period for that year had expired, but argued that adjustments made in the FPAA affected three partners’ net operating loss carryforwards for 2000 and 2001. The partners, in a partnership-level action, conceded that the FPAA was issued within 3 years of the time the partners filed their respective 2000 and 2001 tax returns but moved for summary judgment on the grounds that the period of limitations for assessing tax attributable to partnership items had expired. The partners further argued, on brief, that issues related to the period of limitations for their 2000 and 2001 tax years were partner-level determinations that could not be made in a partnership-level proceeding. The Court rejected the partners’ contentions and held that the period for assessing tax against the partners had not expired and remained suspended. Accordingly, under section 6226 and PCMG Trading Partners we have the authority to address the Manroes’ contention that the period of limitations for assessing tax attributable to partnership items for 2001 has expired. II. The Effective Dates of Sections 6501(c)(10) and 6707A On October 22, 2004, Congress enacted the American Jobs Creation Act of 2004 (AJCA), Pub. L. 108-357, sec. 814(a), 118 Stat. 1581, which added section 6501(c)(10) to the Code. Section 6501(c)(10) provides: (10) Listed transactions. — If a taxpayer fails to include on any return or statement for any taxable year any information with respect to a listed transaction (as defined in section 6707A(c)(2)) which is required under section 6011 to be included with such return or statement, the time for assessment of any tax imposed by this title with respect to such transaction shall not expire before the date which is 1 year after the earlier of— (A) the date on which the Secretary is furnished the information so required, or (B) the date that a material advisor meets the requirements of section 6112 with respect to a request by the Secretary under section 6112(b) relating to such transaction with respect to such taxpayer. Section 6501(c)(10) incorporates by cross-reference the definition of “listed transaction” set forth in section 6707A(c)(2), which was added to the Code by AJCA sec. 811, 118 Stat. 1575. Section 6707A(c) provides: (1) Reportable transaction. — The term “reportable transaction” means any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion. (2) Listed transaction. — The term “listed transaction” means a reportable transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011. The parties dispute the effect of the incorporation of section 6707A(c)(2) in section 6501(c)(10). The dispute centers on the effective date provided in the AJCA with respect to each section. We begin with a review of the principles of statutory construction. The “cardinal principle” of statutory construction requires us “to give effect, if possible, to every clause and word of a statute”. United States v. Menasche, 348 U.S. 528, 538-539 (1955) (internal quotation marks omitted). In applying the traditional rules of statutory construction, we assume that Congress uses language in a consistent manner, unless otherwise indicated. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235-236 (1955). The various sections of the Code should be construed so that one section will explain and support and not defeat or destroy another section. Crane v. Commissioner, 331 U.S. 1, 13 (1947). Furthermore, “Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.” E.I. du Pont de Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924). AJCA sec. 814(b), 118 Stat. 1581, provides that section 6501(c)(10) is effective for tax years “with respect to which the period for assessing a deficiency did not expire before” October 22, 2004. On October 22, 2004, the period for assessing a deficiency with respect to the Manroes’ 2001 tax year was open under section 6501(a).[5] Therefore, if we regard as determinative the effective date provided in AJCA sec. 814(b), section 6501(c)(10) is effective for the Manroes’ 2001 tax year. Section 6707A, which imposes a penalty for failure to include on a return or statement any required information with respect to reportable transactions and listed transactions, is effective for returns and statements the due date for which is after October 22, 2004, and which were not filed before that date. AJCA sec. 811(c), 118 Stat. 1577. Petitioner argues that because section 6707A applies only to returns and statements due after October 22, 2004, section 6501(c)(10) cannot apply to any transaction for which a return or statement was due on or before October 22, 2004. In support of this proposition, petitioner argues that there are two types of listed transactions: (1) Section 6707A listed transactions and (2) listed transactions that predate section 6707A. Petitioner argues that section 6707A listed transactions are those for which a penalty can be assessed under section 6707A and which are subject to section 6501(c)(10). The second type of listed transactions would be those for which no penalty under section 6707A can be assessed and which are not subject to section 6501(c)(10). Nothing in the Code, the AJCA, or the legislative history indicates that Congress intended that there be two types of listed transactions in the manner petitioner suggests. Section 6707A(c) defines “listed transaction” by reference to the regulations promulgated under section 6011. Regulations under section 6011 defining “listed transaction” were first published by the Department of the Treasury and the IRS in temporary and proposed form on February 28, 2000. 65 Fed. Reg. 11207 (Mar. 2, 2000). Similarly, the legislative history makes clear that the section 6707A penalty applies to reportable and listed transactions as defined in the section 6011 regulations. H. Conf. Rept. 108-755, at 582-584 (2004); see also Staff of Joint Comm, on Taxation, General Explanation of Tax Legislation Enacted in the 108th Congress, at 360 (J. Comm. Print 2005). In other words, section 6707A does not alter the definition of reportable transaction or listed transaction. Accordingly, we find that there are not two types of listed transactions in the manner petitioner contends. Section 6707A(c) applies to statements and returns due after October 22, 2004, while section 6501(c)(10) applies to tax years for which the period for assessing a deficiency did not expire before October 22, 2004. Because AJCA sec. 814(a) makes section 6501(c)(10) applicable for tax years for which the period of hmitations remains open as of the date of enactment of the AJCA, section 6501(c)(10) may apply to transactions which are required to be disclosed on returns due well before that date and which therefore would not be subject to a section 6707A penalty if left undisclosed. For that reason, application of the effective date of section 6707A to section 6501(c)(10) would render the express effective date of section 6501(c)(10) meaningless, violating the cardinal principle of statutory construction. We also find significant that section 6707A and section 6501(c)(10) have different purposes. Section 6707A imposes a penalty. Congress intended the penalty to apply prospectively, so that a taxpayer is penalized only if the return was not yet due when the AJCA was signed into law. AJCA sec. 811(c). On the other hand, section 6501(c)(10) keeps open a hmitations period which had not yet expired as of the date of enactment of the AJCA if the taxpayer failed to make the required disclosure of involvement in a listed transaction on a return due before that date. The legislative history details the purpose of leaving the hmitations period open. The Committee has noted that some taxpayers and their advisors have been employing dilatory tactics and failing to cooperate with the IRS in an attempt to avoid liability because of the expiration of the statute of limitations. The Committee accordingly believes that it is appropriate to extend the statute of limitations for unreported listed transactions. [H. Rept. 108-548 (Part 1), at 267 (2004).] See also Staff of Joint Comm, on Taxation, supra at 368 (extension of period of limitations “will encourage taxpayers to provide the required disclosure and will afford the IRS additional time to discover the transaction if the taxpayer does not disclose it”). On July 23, 2004, Senator Charles Grassley, Chairman of the Committee on Finance, and Senator Max Baucus, Ranking Member of the Committee on Finance, proposed that the period of limitations be extended to allow the IRS to challenge tax-avoidance transactions, specifically Son-of-BOSS transactions[6] that occurred as early as 2000.[7] Son of Boss transactions were aggressively marketed in the late 1990s and 2000 to companies and high net-worth individuals. Many of these transactions generated tax losses of between $10 million and $50 million. On August 15th, 2004, the statute of limitations for extended calendar year 2000 income tax returns will close for a significant number of non-disclosing Son of Boss investors. These investors will escape their rightful tax liability after that date. It is the view of the Chairman and Ranking Member of the Senate Finance Committee that non-disclosing Son of Boss investors should not be allowed to “run out the clock” on the statute of limitations before the IRS finds them. The IRS and Department of Treasury have been on record in opposing these transactions since 1999. The purchase of these tax shelters in the year 2000 was an act of sheer defiance and disregard for the tax laws of the United States. The Senate and House versions of the bill * * * contain a measure that would hold open the statute of limitations on a transaction listed by the Treasury Department as a tax shelter, such as the Son of Boss transaction, but this measure only applies to taxable years that are open to audit after the * * * bill is enacted. * * * [Press Release, Senator Charles Grassley, Details of Plans to Ensure Continued “Son of Boss” Enforcement (July 23, 2004).] Had Congress intended section 6501(c)(10) to apply only to transactions for which a return or statement was due after October 22, 2004, it could have done so expressly. Similarly, if Congress had intended to apply the effective date of section 6707A to section 6501(c)(10), it could have done so by limiting application of section 6501(c)(10) to cases in which a taxpayer is subject to a penalty under section 6707A. Congress did not choose either of those avenues. Petitioner argues that respondent is applying section 6501(c)(10) retroactively, and if Congress had intended retroactive application, Congress would have so expressly stated.[8] Petitioner is mistaken. Section 6501(c)(10) does not reopen an assessment period that expired before its enactment. See H. Conf. Rept. 108-755, supra at 593 n.482; Staff of Joint Comm, on Taxation, supra at 369 n.663. Keeping open the period of limitations in this fashion is not impermissible retroactive action. In a manner analogous to the enactment of section 6501(c)(10), section 6502(a)(1) was amended to extend the limitations period from 6 years to 10 years if the limitations period had not expired as of the date the amendment was enacted. Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11317(a)(1), (c), 104 Stat. 1388-458. In Rocanova v. United States, 955 F. Supp. 27 (S.D.N.Y. 1990), affd. 109 F.3d 127 (2d Cir. 1997), the District Court rejected arguments that the amendment operated with impermissible retroactive effect in violation of the Due Process Clause, the Equal Protection Clause, and the Ex Post Facto Clause of the Constitution. Furthermore, petitioner’s argument is similar to an argument rejected by the U.S. Court of Appeals for the Ninth Circuit, the court to which an appeal in this case would ordinarily lie. See Leslie v. Commissioner, 146 F.3d 643, 650-652 (9th Cir. 1998), affg. T.C. Memo. 1996-86. In Leslie, the Commissioner sought enhanced interest pursuant to section 6621(c) because of the taxpayers’ use of a straddle transaction. In defining “tax-motivated transactions” to which the enhanced-interest provision applied, section 6621(c)(3)(A)(iii) included “any straddle (as defined in section 1092(c) without regard to subsection (d) or (e) of section 1092)”. Section 6621 applied to interest accruing after December 31, 1984, even though the transaction giving rise to the underpayment of tax on which interest accrued was entered into before that date, while section 1092 applied to property acquired and positions established by the taxpayers after June 23, 1981. The taxpayers contended that because their transactions occurred before June 23, 1981, section 1092 did not apply to their transactions, and therefore section 6621(c)(3)(A)(iii), which incorporated the definition in section 1092, did not apply to their transactions either. Leslie v. Commissioner, supra at 651. The Court of Appeals rejected the taxpayers’ “interesting but ultimately unavailing” argument, finding that the Commissioner was applying section 6621(c), and that the effective date of section 1092 was not determinative of the issue before the court as to the taxpayers’ liability for increased interest. In concluding that the taxpayers’ argument must fail, the court explained: Section 6621(c)(3)(A)(iii) references § 1092 for one simple reason: § 1092 contains what the drafters of § 6621 deemed to be a useful definition of “straddle.” In the interest of expediency, rather than trotting out the same exact definition again, they simply cross referenced § 1092, which a prior Congress had already adopted. * * * [7ci.] In this case section 6501(c)(10) cross-references the definition of “listed transaction” in section 6707A, enacted by the same act of Congress. Nevertheless, the reason for the cross-reference is analogous to that in Leslie. See also Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986). The definition of “listed transaction” provided in section 6707A was useful, and Congress chose to cross-reference the definition for expediency’s sake with the effect that the definition in section 6707A was incorporated into section 6501(c)(10), but not its effective date.[9] III. Whether the Transaction at Issue Is a Listed Transaction A transaction is a listed transaction if it is substantially similar to one of the types of transactions the IRS has determined to be a tax avoidance transaction and has identified by notice, regulation, or other form of published guidance as a listed transaction. Sec. 6707A(c)(2); sec. 1.6011-4(b)(2), Income Tax Regs. On September 5, 2000, the Commissioner issued Notice 2000-44, 2000-2 C.B. 255, which described Son-of-BOSS transactions and determined that they are listed transactions. Notice 2000-44, 2000-2 C.B. at 255, includes the following discussion of that type of transaction: These arrangements purport to give taxpayers artificially high basis in. partnership interests and thereby give rise to deductible losses on disposition of those partnership interests. $**$*«* In * * * [one example], a taxpayer purchases and writes options and purports to create substantial positive basis in a partnership interest by transferring those option positions to a partnership. For example, a taxpayer might purchase call options for a cost of $1,000X and simultaneously write offsetting call options, with a slightly higher strike price but the same expiration date, for a premium of slightly less than $1,000X. Those option positions are then transferred to a partnership which, using additional amounts contributed to the partnership, may engage in investment activities. Under the position advanced by the promoters of this arrangement, the taxpayer claims that the basis in the taxpayer’s partnership interest is increased by the cost of the purchased call options but is not reduced under § 752 as a result of the partnership’s assumption of the taxpayer’s obligation with respect to the written call options. Therefore, disregarding additional amounts contributed to the partnership, transaction costs, and any income realized and expenses incurred at the partnership level, the taxpayer purports to have a basis in the partnership interest equal to the cost of the purchased call options ($1,000X in this example), even though the taxpayer’s net economic outlay to acquire the partnership interest and the value of the partnership interest are nominal or zero. On the disposition of the partnership interest, the taxpayer claims a tax loss ($1,000X in this example), even though the taxpayer has incurred no corresponding economic loss. There are many similarities between the transaction at issue and the one described in Notice 2000-44, supra. However, the transaction at issue did not involve the purchasing and writing of options. It involved the short sale of securities. Nevertheless, we conclude that the transaction at issue is substantially similar to the one described in Notice 2000-44, supra. The regulations define the term “substantially similar” as “any transaction that is expected to obtain the same or similar types of tax benefits and that is either factually similar or based on the same or similar tax strategy.” Sec. 1.6011-4T(b)(l)(i), Temporary Income Tax Regs., 67 Fed. Reg. 41327 (June 18, 2002). Section 1.6011-4T(b)(l)(ii), Temporary Income Tax Regs., supra, contains the following highly pertinent example illustrating the meaning of “substantially similar” and concluding that the transaction described in Notice 2000-44, supra, and a similar transaction involving short sales are substantially similar. Example 1. Notice 2000-44 * * * sets forth a listed transaction involving offsetting options transferred to a partnership where the taxpayer claims basis in the partnership for the cost of the purchased options but does not adjust basis under section 752 as a result of the partnership’s assumption of the taxpayer’s obligation with respect to the options. Transactions using short sales, futures, derivatives or any other type of offsetting obligations to inflate basis in a partnership interest would be the same as or substantially similar to the transaction described in Notice 2000-44. * * * [Emphasis added.] The fundamental components of the transaction described in Notice 2000-44, supra, are the generation of funds through the creation of a liability and the contribution of the funds (or the asset purchased with such funds) and the associated liability to the partnership without adjusting the partner’s basis for the liability. That is precisely what the Manroes did. They generated funds through the short sale of borrowed Treasury notes and contributed those funds and the obligation to cover the short sale to the partnership. The Manroes claimed bases in their partnership interests which included the short sale proceeds but which were not reduced by the obligation to cover the short sale. They then disposed of their partnership interests and claimed more than $5 million of tax losses even though there was no equivalent economic loss. Accordingly, we hold that the transaction at issue was substantially similar to the transaction described in Notice 2000-44, supra, and is therefore a listed transaction. IV. Section 1.6011^4, Income Tax Regs. Petitioner argues that section 1.6011-4T, Temporary Income Tax Regs., 67 Fed. Reg. 41327 (June 18, 2002) (the temporary regulation), which requires disclosure of participation in listed transactions, is invalid because it violates Executive Order 12866, 3 C.F.R. 638 (1994) (Executive Order 12866), and the Regulatory Flexibility Act (RFA), 6 U.S.C. secs. 601-612 (1994). Executive Order 12866 requires that the Office of Management and Budget review proposed “significant regulatory action”. A regulatory assessment of the temporary regulation at issue was not conducted because the Department of the Treasury and the IRS concluded that it was not a “significant regulatory action.” 67 Fed. Reg. 41327 (June 18, 2002). Petitioner argues that the regulation is a significant regulatory action requiring review. Petitioner’s contentions are not persuasive. Section 10 of Executive Order 12866, 3 C.F.R. at 649, states: Nothing in this Executive order shall affect any otherwise available judicial review of agency action. This Executive order is intended only to improve the internal management of the Federal Government and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies or instrumen-talities, its officers or employees, or any other person. Accordingly, petitioner has no right to challenge compliance with Executive Order 12866. See Michigan v. Thomas, 805 F.2d 176, 187 (6th Cir. 1986); Trawler Diane Marie, Inc. v. Brown, 918 F. Supp. 921, 932 (E.D.N.C. 1995), affd. without published opinion 91 F.3d 134 (4th Cir. 1996). In certain situations, the RFA requires that an agency prepare a regulatory flexibility analysis. RFA, 5 U.S.C. secs. 603-604. However, a regulation is excepted if the agency certifies that the rule will not have a significant economic impact on a substantial number of small entities. The Department of the Treasury and the IRS made that certification in part on the basis of a finding that the time required to prepare and submit a disclosure pursuant to the temporary regulation was not expected to be lengthy. 67 Fed. Reg. 41327 (June 18, 2002). Petitioner argues that the regulation will háve a significant economic impact on a substantial number of small entities. Petitioner confuses the disclosure of a tax avoidance transaction with its disallowance. We are not persuaded to override the certification that the submission of a disclosure form with a return in the manner required by the temporary regulation does not have a significant economic impact on a substantial number of small entities. Petitioner also argues that the temporary regulation is invalid because it does not comply with the notice and comment requirements of the Administrative Procedure Act (apa), 5 U.S.C. sec. 553(b) and (c) (1994). Petitioner contends that if the temporary regulation is invalid, section 6501(c)(10) cannot apply to the partnership or the Manroes because they had no duty to disclose their participation in the transaction at issue. We conclude, however, that the final regulation, section 1.6011-4, Income Tax Regs., validly promulgated on February 28, 2003, in T.D. 9046, 2003-1 C.B. 614, which incorporates the rules of the temporary regulation, controls the outcome of this case. Some background will be useful. On June 14, 2002, the temporary regulation was amended in two ways that matter to this case: (1) It extended to individuals, trusts, partnerships, and S corporations the requirement to disclose listed transactions, which previously had applied only to corporate taxpayers; and (2) it provided that if a transaction becomes a reportable transaction after the taxpayer has filed the return for the first year in which the transaction affected the taxpayer’s or a partner’s tax liability, the disclosure statement must be filed as an attachment to the taxpayer’s next-filed return (hereinafter the next-return disclosure requirement).[10] 67 Fed. Reg. 41325, 41326 (June 18, 2002). Also on June 18, 2002, notice was published and comments were sought for the final regulation, section 1.6011-4, Income Tax Regs. The text of the proposed regulation was the same as the text of the temporary regulation as reissued the same day. Notice of Proposed Rulemaking by Cross-Reference to Temporary Regulations, 67 Fed. Reg. 41360 (June 18, 2002). The effective date of the temporary regulation (and of the proposed regulation by cross-reference) was for “Federal income tax returns filed after February 28, 2000” except that the two amendments described above, among others, were made applicable “to any transaction entered into on or after January 1, 2001.” Sec. 1.6011-4T(g), Temporary Income Tax Regs., 67 Fed. Reg. 41328 (June 18, 2002). On October 22, 2002, the temporary regulation was amended once again, and notice was published and comments were sought for making the temporary regulation final.[11] Notice of Proposed Rulemaking by Cross-Reference to Temporary Regulations, 67 Fed. Reg. 64840 (Oct. 22, 2002). The effective date of the temporary regulation (and of the proposed regulation by cross-reference) was as follows: (h) Effective dates. This section applies to Federal income tax returns filed after February 28, 2000. However, paragraphs (a) through (g) of this section [reflecting the new amendments] apply to transactions entered into on or after January 1, 2003. The rules that apply with respect to transactions entered into on or before December 31, 2002, are contained in §1.6011-4T in effect prior to January 1, 2003 (see 26 CFR part 1 revised as of April 1, 2002, and 2002-28 I.R.B. 90 (see §601.601(d)(2) of this chapter)). [67 Fed. Reg. 64805 (Oct. 22, 2002); emphasis added.] The final regulation, published February 28, 2003, reflected various amendments to the temporary regulations in response to public comments. T.D. 9046, supra. It retained a provision substantially similar to the next-return disclosure requirement of the temporary regulation.[12] The final regulation carried this effective date: (h) Effective dates. This section applies to federal income tax returns filed after February 28, 2000. However, paragraphs (a) through (g) of this section apply to transactions entered into on or after February 28, 2003. All the rules in paragraphs (a) through (g) of this section may be relied upon for transactions entered into on or after January 1, 2003, and before February 28, 2003. Otherwise, the rules that apply with respect to transactions entered into before February 28, 2003, are contained in §1.6011 — 4T in effect prior to February 28, 2003 (see 26 CFR part 1 revised as of April 1, 2002, 2002-28 I.R.B. 90, and 2002-45 I.R.B. 818 (see §601.601(d)(2) of this chapter)). \Id., 2003-1 C.B. at 622; emphasis added.] Pursuant to this provision the final regulation applies, as it says, to tax returns filed after February 28, 2000, and the rules applicable to transactions entered into before January 1, 2003, are determined under the final regulation by reference to the rules of the temporary regulation. The final regulation suspended the temporary regulation as of February 28, 2003. T.D. 9046, 2003-1 C.B. at 622.[13] Consequently, the rules in the temporary regulation have continuing force and effect only by virtue of their incorporation into the final regulation. The question is whether the final regulation ran afoul of the APA by incorporating the rules of the temporary regulation by cross-referencing them. The answer is clearly no. The final regulation’s use of a cross-reference to incorporate the temporary regulation rules creates no more of a procedural deficiency under the APA than if the final regulation had reproduced the rules of the temporary regulation word for word. Notice 2000-44, 2000-2 C.B. 255, published more than a year before the Manroes entered into their transaction, identified that type of transaction as a listed transaction. On June 14, 2002, the Secretary published a notice of proposed rulemaking, containing proposed regulations requiring disclosure of such a transaction; they embodied the provisions of the temporary regulation issued the same day. This notice of proposed rulemaking provided notice of, among other things: (1) The disclosure requirement as applying to both corporate and noncorporate taxpayers; and (2) the next-return disclosure requirement. The Manroes’ transaction first became a reportable transaction on February 28, 2003, when the final regulation was issued. As of that date, the Manroes had already filed their 2001 return but had not yet filed their 2002 return. Consequently, the final regulation, incorporating the rules of the temporary regulation, required them to attach a statement to their 2002 return disclosing the listed transaction. When they filed their 2002 return on October 15, 2003 — more than 7 months after the final regulation was issued — they failed to include such a statement. Section 6501(c)(10) provides that if a taxpayer fails to include “on any return or statement for any taxable year” any information with respect to a listed transaction (as defined in section 6707A(c)(2)) which is required under section 6011, the time for assessing any tax “with respect to such transaction” remains open. Section 6501(c)(10) is effective for tax years with respect to which the period for assessing a deficiency did not expire before October 22, 2004. As of that date, the 3-year period of limitations remained open with respect to the Manroes’ 2001 return, which they filed on October 15, 2002. Consequently, because the Manroes failed to provide the required statement when they filed either their 2001 or 2002 return, the period of limitations remains open with respect to any tax in 2001 and 2002 with respect to the transaction in question. Under section 6501(c)(10), it is of no consequence that the transaction in question became a reportable transaction after the transaction had already occurred.[14] The legislative history expressly contemplated such a result. It states: “For example, if a taxpayer engaged in a transaction in 2005 that becomes a listed transaction in 2007 and the taxpayer fails to disclose such transaction in the manner required by Treasury regulations, then the transaction is subject to the extended statute of limitations.”[15] H. Conf. Rept. 108-755, supra at 382. In any event, as previously discussed, the force and effect of the final regulation was entirely prospective, requiring the Manroes to disclose the transaction in a statement with their 2002 return, which had not yet been filed. To recapitulate, the Manroes’ obligation to disclose their transaction arose upon the issuance of the final regulation. The final regulation, including its provisions incorporating the rules of the temporary regulation, was subject to notice and comment and is valid. After the issuance of the final regulation, the Manroes were required prospectively to report the listed transaction in a statement attached to their 2002 tax return. They failed to do so. Consequently, the period of limitations remains open under section 6501(c)(10) for 2001. The Court, in reaching its holding, has considered all arguments made and concludes that any arguments not mentioned above are moot, irrelevant, or without merit. To reflect the foregoing, An order will be issued granting respondent’s motion for partial summary judgment and denying petitioner’s cross-motion for partial summary judgment. Reviewed by the Court. Colvin, Cohen, Wells, Vasquez, Gale, Thornton, Marvel, Goeke, Wherry, Kroupa, and Paris, JJ., agree with this majority opinion. Gustafson and Morrison, JJ., did not participate in the consideration of this opinion. Unless otherwise indicated, section references are to the Internal Revenue Code (Code), as amended. Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar. A short sale is the sale of borrowed securities, typically for cash. The short sale is closed when the short seller buys and returns identical securities to the person from whom he borrowed them. The record is inconsistent as to whether the redemption price of Mr. Manroe’s interest is $380,988 or $330,988. The inconsistency has no bearing on the issues presented in these motions. For purposes of these motions, we shall assume the redemption price was $380,988. On Oct. 18, 2006, shortly after the issuance of the FPAA, the Manroes submitted to respondent a Form 1040X, Amended U.S. Individual Income Tax Return, for 2002. The amended return eliminated the capital loss carryover and increased the Manroes’ income by $458,190. Respondent did not process the amended return. The Manroes’ 2001 return was filed on Oct. 15, 2002, starting the running of the 3-year period of limitations under sec. 6501(a), which thus remained open on Oct. 22, 2004. Son-of-BOSS is a variation of a slightly older alleged tax shelter known as BOSS, an acronym for “bond and option sales strategy”. There are a number of different types of Son-of-BOSS transactions, but they all have in common the transfer of assets encumbered by significant liabilities to a partnership, with the goal of increasing basis in that partnership. The liabilities are usually obligations to buy securities and typically are not completely fixed at the time of transfer. The partnership treats the liabilities as uncertain and ignores them in computing basis. The objective is that the partners will have a basis in the partnership so great as to provide for large — but not out-of-pocket — losses on their individual tax returns. Kligfeld Holdings v. Commissioner, 128 T.C. 192, 194 (2007). Senators Grassley and Baucus were proposing the inclusion of a provision similar to sec. 6501(c)(10) in an amendment to the Jumpstart Our Business Strength (JOBS) Act, S. 1637, 108th Cong., 1st sess. (2003), the Senate version of a bill that ultimately passed as the AJCA. Petitioner refers to the provision as an “ex post facto clawback”. The constitutional prohibition against ex post facto laws applies only to penal legislation that imposes or increases criminal punishment for conduct predating its enactment. Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952). We note that sec. 6501(e)(10) is not the only place in the Code in which a cross-reference is made to the definitions of “listed transaction” and “reportable transaction” provided in sec. 6707A(c). E.g., secs. 4965(e), 6111(b), 6112(a), 6404(g), 6662A(d), 6707(d). In this latter regard, the temporary regulation provided: (d) Time of providing disclosure — (1) * * * If a transaction becomes a reportable transaction (e.g., the transaction subsequently becomes one identified in pubbshed guidance as a listed transaction described in (b)(2) of this section * * *) on or after the date the taxpayer has filed the return for the first taxable year for which the transaction affected the taxpayer’s or a partner’s or a shareholder’s Federal income tax liability, the disclosure statement must be filed as an attachment to the taxpayer’s Federal income tax return next filed after the date the transaction becomes a reportable transaction (whether or not the transaction affects the taxpayer’s or any partner’s or shareholder’s Federal income tax liability for that year). * * * [67 Fed. Reg. 41328 (June 18, 2002).] This version of the temporary regulation contained new amendments that are not germane to the present discussion. See 67 Fed. Reg. 64799 (Oct. 22, 2002). The final regulation provided in par. (e)(2): (2) Special rules — (i) Listed transactions. If a transaction becomes a listed transaction after the filing of the taxpayer’s final tax return reflecting either tax consequences or a tax strategy described in the published guidance listing the transaction (or a tax benefit derived from tax consequences or a tax strategy described in the published guidance listing the transaction) and before the end of the statute of limitations period for that return, then a disclosure statement must be filed as an attachment to the taxpayer’s tax return next filed after the date the transaction is listed. [T.D. 9046, 2003-1 C.B. 614, 621.] In addition to stating that the final regulation issued on Feb. 28, 2003, superseded the temporary regulations, T.D. 9046, 2003-1 C.B. at 622, also summarizes the effective date of the final regulation by stating that it applies “to transactions entered into on or after Feb. 28, 2003.” Clearly, this shorthand description does not alter the actual effective-date provision contained in par. (h) of the final regulation. Rather, the sense of this shorthand description is that as of Feb. 28, 2003, the final regulation replaced the temporary regulation. Actually, as previously discussed, the Manroes’ transaction was a listed transaction under Notice 2000-44, supra, long before they entered into it. Because sec. 6501(c)(10) cross-references the definition of “listed transaction” under sec. 6707A(c)(2), which makes a listed transaction a species of "reportable transaction”, the transaction became a “listed transaction” for purposes of sec. 6501(c)(10) when the obligation to report it arose; i.e., no later than upon the issuance of the final regulation. In a footnote to this statement, the legislative history also states: If the Treasury Department lists a transaction in a year subsequent to the year in which a taxpayer entered into such transaction and the taxpayer’s tax return for the year the transaction was entered into is closed by the statute of limitations prior to the date the transaction became a listed transaction, this provision does not re-open the statute of limitations with respect to such transaction for such year. However, if the purported tax benefits of the transaction are recognized over multiple tax years, the provision’s extension of the statute of limitations shall apply to such tax benefits in any subsequent tax year in which the statute of limitations had not closed prior to the date the transaction became a listed transaction. [H. Conf. Rept. 108-755, at 593 n.482 (2004).]