T.C. Memo. 2012-273

UNITED STATES TAX COURT

BLAK INVESTMENTS, KYLE W. MANROE TRUST, ROBERT MANROE
AND LORI MANROE, TRUSTEES, TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1283-07.                    Filed September 25, 2012.

Ernest Scribner Ryder, Richard V. Vermazen, and Lauren A. Rinsky, for

petitioner.

Donna F. Herbert, Jonathan H. Sloat, and Eugene Kim, for respondent.

**[\*2]**                    MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  This case is before the Court on petitioner's motion for summary judgment, filed pursuant to Rule 121,[1] to which respondent objects.  We previously held in <u>BLAK Invs. v. Commissioner</u>, 133 T.C. 431 (2009) (prior Opinion), that the period of limitations for assessment of tax resulting from the adjustment of partnership items with respect to the transaction at issue is open for the year 2001 under section 6501(c)(10).  Subsequently, petitioner stipulated that "BLAK Investments was a sham, lacked economic substance, and was formed and/or availed of to claim deductions of artificial losses solely for tax purposes" and conceded that a 20% accuracy-related penalty under section 6662(a) applies to the entire underpayment of tax resulting from the transaction.  The sole issue remaining for decision is whether petitioner is liable for the higher 40% penalty rate for a gross valuation misstatement under section 6662(h).

<u>Background</u>

The facts are set forth in our prior Opinion and are incorporated herein by this reference.  For convenience, we summarize the relevant facts.

---

[1]  All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

**[*3]** I. <u>The Transaction at Issue</u>

BLAK Investments is a California general partnership created by Robert Manroe and Lori Manroe (Manroes). On December 12, 2001, the Manroes, as trustees of the Manroe Family Trust, borrowed Treasury notes with a maturity value of $6,815,000 and sold the notes short on the open market for $5,481,713. That same day, they contributed the short sale proceeds, $825,000 from the Manroe Family Trust account, and the obligation to cover the short sale to BLAK Investments in exchange for approximately 95% of the partnership interests.[2] The Manroes took the position that the obligation to cover the short sale was not a liability for purposes of section 752(b), and they claimed a total basis in their partnership interests equal to the contribution of the short sale proceeds and $825,000 cash.

On December 28, 2001, BLAK Investments redeemed Ms. Manroe's interest in the partnership for $457,185 in cash and Mr. Manroe's interest in the partnership for $330,988 in cash and the U.S. dollar equivalent of $50,000 in foreign currency. The Manroes claimed a short-term capital loss of $2,982,840 on the redemption of Ms. Manroe's interest and an ordinary loss of $2,539,769 on the

---

[2] Two trusts the Manroes created for the benefit of their children owned approximately 5% of the partnership interests.

[*4] subsequent conversion of the foreign currency into U.S. dollars. On October 13, 2006, respondent issued BLAK Investments a final partnership administrative adjustment (FPAA) disallowing both losses.

II.   Procedural History

Petitioner, the tax matters partner of BLAK Investments, timely petitioned the Court for review of the FPAA, arguing that respondent erred in determining that BLAK Investments was a sham and lacked economic substance, erred in making the adjustments set forth in the FPAA, and erred in asserting penalties. Petitioner further argued that, in any event, the FPAA was not timely because the period of limitations for assessment of tax for 2001 had expired. Both parties filed motions for partial summary judgment as to the statute of limitations issue. In our prior Opinion, we granted respondent's motion and denied petitioner's cross-motion. We found that the transaction at issue is a listed transaction that is substantially similar to the transaction described in Notice 2000-44, 2000-2 C.B. 255,[3] and that petitioner failed to disclose its participation in the transaction as

---

[3] This notice describes the tax shelter called Son-of-BOSS and its many varieties. They generally revolve around a common theme of artificially inflating basis in a partnership through the contribution of funds (commonly generated using options, short sales, futures, derivatives, or similar means) and an associated, offsetting liability that is typically not completely fixed at the time of transfer. See Kligfeld Holdings v. Commissioner, 128 T.C. 192, 194 (2007).

[*5] required under section 1.6011-4, Income Tax Regs. We held that section 1.6011-4, Income Tax Regs., and section 6501(c)(10) are valid and effective as to the transaction, and hence the period of limitations for assessment of tax is open for 2001.

Petitioner subsequently conceded that BLAK Investments is a sham and lacks economic substance. Petitioner further conceded that BLAK Investments is to be disregarded for Federal income tax purposes and the capital contributions to BLAK Investments are to be reduced from the $6,346,713 reported to zero. Finally, petitioner conceded that it is liable for a 20% accuracy-related penalty under section 6662(a). The only issue left in dispute is whether the appropriate penalty is the 20% penalty that petitioner conceded or the higher 40% penalty for a gross valuation misstatement.

Discussion

I.     Summary Judgment

Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Full or partial summary judgment may be granted only if it is demonstrated that no genuine dispute exists as to any material fact and that the legal issues presented by the motion may be decided as a matter of law. See Rule 121(b); Sundstrand Corp. v. Commissioner,

**[*6]** 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). We conclude that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law.

II.     Gross Valuation Misstatement Penalty

Under section 6662(h), a taxpayer may be liable for a 40% penalty on any portion of an underpayment of tax attributable to a gross valuation misstatement. A gross valuation misstatement exists if the value or adjusted basis of any property claimed on a tax return is 400% or more of the amount determined to be the correct amount of such value or adjusted basis. Sec. 6662(h)(2)(A). Whether there is a gross valuation misstatement in the partnership context is determined at the partnership level. Sec. 1.6662-5(h)(1), Income Tax Regs.

We have held that when the Commissioner asserts a ground unrelated to value or basis of property for totally disallowing a deduction or credit and a taxpayer concedes the deduction or credit on that unrelated ground, any underpayment resulting from the concession is not attributable to a gross valuation misstatement. See McCrary v. Commissioner, 92 T.C. 827, 851-856 (1989). Petitioner conceded the deductions on the grounds that BLAK Investments is a sham and lacks economic substance--grounds unrelated to the value or basis of the Treasury notes, foreign currency, or any other property in the transaction.

[*7] Nonetheless, it has long been the Court's view that the gross valuation misstatement penalty does apply when the Court determines that an underpayment stems from deductions or credits that are disallowed because a transaction lacks economic substance or a participant is a sham. See Petaluma FX Partners, LLC v. Commissioner, 131 T.C. 84, 104-105 (2008), aff'd in pertinent part, rev'd in part and remanded, 591 F.3d 649 (D.C. Cir. 2010); Merino v. Commissioner, T.C. Memo. 1997-385, aff'd, 196 F.3d 147 (3d Cir. 1999); Zfass v. Commissioner, T.C. Memo. 1996-167, aff'd, 118 F.3d 184 (4th Cir. 1997); Illes v. Commissioner, T.C. Memo. 1991-449, aff'd, 982 F.2d 163 (6th Cir. 1992); Gilman v. Commissioner, T.C. Memo. 1989-684, aff'd, 933 F.2d 143 (2d Cir. 1991); Massengill v. Commissioner, T.C. Memo. 1988-427, aff'd, 876 F.2d 616 (8th Cir. 1989).

The Courts of Appeals are split on this issue. The Courts of Appeals for the First, Second, Third, Fourth, Sixth, and Eighth Circuits have affirmed the imposition of the valuation overstatement or misstatement penalty where the underpayment results from a sham transaction lacking economic substance. Fid. Int'l Currency Advisor A Fund v. United States, 661 F.3d 667, 674 (1st Cir. 2011); Merino v. Commissioner, 196 F.3d at 158-159; Zfass v. Commissioner, 118 F.3d at 191; Illes v. Commissioner, 982 F.2d at 167; Gilman v. Commissioner, 933 F.2d at 151; Massengill v. Commissioner, 876 F.2d at 619-620. On the contrary, the

**[\*8]** Courts of Appeals for the Fifth and Ninth Circuits hold that when a deduction or credit is disallowed in full, the resulting underpayment is not attributable to a valuation overstatement. Keller v. Commissioner, 556 F.3d 1056, 1060-1061 (9th Cir. 2009), aff'g in part, rev'g in part T.C. Memo. 2006-131; Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir. 1990), rev'g T.C. Memo. 1988-408. Both parties agree that an appeal of this case would lie in the Ninth Circuit.

In Bergmann v. Commissioner, 137 T.C. 136 (2011), we recently decided a case that is indistinguishable from the present case. The taxpayers there engaged in a son-of-BOSS transaction using offsetting option contracts that was substantially similar to the transaction described in Notice 2000-44, supra, and in the present case. Id. at 137-138. They conceded that they were not entitled to the loss deductions stemming from the transaction and would be liable for the 20% accuracy-related penalty if they failed to file a qualified amended return under section 1.6664-2(c)(3), Income Tax Regs. (which we held they failed to do). Id. at 136-137, 139 n.3. We then decided whether the taxpayers were liable for the higher 40% penalty for a gross valuation misstatement. Id. at 145. We noted that the Court of Appeals for the Ninth Circuit, "recognizing that in many Federal circuits the gross valuation penalty applies 'when overvaluation is intertwined with a tax avoidance scheme that lacks economic substance', held that it was

**[\*9]** constrained under its own precedent from applying the gross valuation penalty in that situation." Id. at 146 (quoting Keller v. Commissioner, 556 F.3d at 1061). We held, under Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), that we would follow the Ninth Circuit decision in Keller as it was squarely on point. Bergmann v. Commissioner, 137 T.C. at 146-147.

Petitioner argues that Keller likewise controls here.[4] Respondent makes no attempt to distinguish Keller or Bergmann from the present case. Fully aware that these cases are binding precedent, he instead argues that we should decline to follow the Ninth Circuit opinion in Keller and "disregard" our previous Opinion in Bergmann.[5] Before addressing the merits of their arguments, we briefly review the doctrine of stare decisis and the reason we do not just disregard precedent.

A.    Stare Decisis

In Vasquez v. Hillery, 474 U.S. 254, 265-266 (1986), the Supreme Court stated:

> [T]he important doctrine of stare decisis [is] the means by which we ensure that the law will not merely change erratically, but will

---

[4] Bergmann v. Commissioner, 137 T.C. 136 (2011), had not yet been decided at the time petitioner filed its motion for summary judgment.

[5] Respondent filed his response to petitioner's motion for summary judgment before Bergmann was decided, but he later supplemented his response to address our holding in Bergmann.

**[*10]** develop in a principled and intelligible fashion. * * * While stare decisis is not an inexorable command, the careful observer will discern that any detours from the straight path of stare decisis in our past have occurred for articulable reasons, and only when the Court has felt obliged "to bring its opinions into agreement with experience and with facts newly ascertained." Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 412, 52 S.Ct. 443, 449, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting).

Our history does not impose any rigid formula to constrain the Court in the disposition of cases. Rather, its lesson is that every successful proponent of overruling precedent has borne the heavy burden of persuading the Court that changes in society or in the law dictate that the values served by stare decisis yield in favor of a greater objective. * * *

We have similarly stated that stare decisis "generally requires that we follow the holding of a previously decided case, absent special justification. This doctrine is of particular importance when the antecedent case involves statutory construction". State Sec. Bank v. Commissioner, 111 T.C. 210, 213-214 (1998), aff'd, 214 F.3d 1254 (10th Cir. 2000); see also Hesselink v. Commissioner, 97 T.C. 94, 99-100 (1991). Therefore, respondent bears the heavy burden of persuading us that we should overrule our established precedent.

Respondent has advanced only one argument that merits further discussion. He argues that because the Court of Appeals for the Ninth Circuit did not consider section 1.6662-5(g), Income Tax Regs., in Keller, that decision has been superseded by the intervening opinion of the Supreme Court in Mayo Found. for

**[*11]** Med. Educ. & Research v. United States, 562 U.S. ___, 131 S. Ct. 704 (2011), which emphatically reminded lower courts that they must defer to regulations that satisfy the two-step Chevron standard. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-843 (1984). He further argues that we should "disregard Bergmann because it fails to address the deference argument". We disagree.

B.     The Regulation

Section 1.6662-5(g), Income Tax Regs., states: "The value or adjusted basis claimed on a [tax] return of any property with a correct value or adjusted basis of zero is considered to be 400 percent or more of the correct amount. There is a gross valuation misstatement with respect to such property, therefore, and the applicable penalty rate is 40 percent." It is essential to consider this regulation in the context of the statute, which imposes a penalty on an underpayment of tax "attributable to" a substantial valuation misstatement. Sec. 6662(a), (b)(3). The statute defines a gross valuation misstatement by reference to a substantial valuation misstatement, substituting 400% for 200% each place it appears. Sec. 6662(h)(2)(A). Therefore, if an underpayment of tax is not attributable to a substantial valuation misstatement, there can be no gross valuation misstatement and the regulation would have no application.

**[\*12]** Contrary to respondent's assertions that we must give deference to this regulation because <u>Keller</u> did not address it and is inconsistent with it, we believe that the regulation would not apply under the Court of Appeals for the Ninth Circuit decisions in <u>Keller</u> and <u>Gainer v. Commissioner</u>, 893 F.2d 225 (9th Cir. 1990), aff'g T.C. Memo. 1988-416, upon which <u>Keller</u> relies. The Court of Appeals was well aware of the regulation when it decided <u>Keller</u>.[6] We believe the Court of Appeals saw no need to address the regulation as the taxpayer there did not contest the amount of the overvaluation; he instead argued that section 6662(h) is not "applicable in the first instance" because "his tax underpayment is not 'attributable to' the valuation overstatement". <u>Keller v. Commissioner</u>, 556 F.3d at 1059.

The Court of Appeals agreed with the taxpayer and held that "When a depreciation deduction is disallowed in total, any overvaluation is subsumed in that disallowance, and an associated tax underpayment is 'attributable to' the invalid deduction, not the overvaluation of the asset." <u>Id.</u> at 1061. Because the Court of Appeals found that section 6662(h) was inapplicable, the regulation interpreting section 6662(h) would have been equally inapplicable. Moreover, the Court of

---

[6] Sec. 1.6662-5(g), Income Tax Regs., was cited in <u>Keller v. Commissioner</u>, T.C. Memo. 2006-131, <u>aff'd in part, rev'd in part</u>, 556 F.3d 1056 (9th Cir. 2009), which the Court of Appeals reversed and remanded on this issue.

**[*13]** Appeals for the Fifth Circuit (which shares both the Court of Appeals for the Ninth Circuit's reasoning and holding on this issue) has addressed section 1.6662-5(g), Income Tax Regs., in a recent case and found it inapplicable. See Bemont Invs., L.L.C. ex rel. Tax Matters Partner v. United States, 679 F.3d 339, 348 n.5 (5th Cir. 2012) (finding that the regulation "does not purport to negate the holdings in the cases discussed above--that the valuation misstatement penalty does not apply when the IRS completely disallows a deduction on other grounds. It only helps determine whether a valuation misstatement is a gross misstatement. In particular it specifies how to characterize a valuation misstatement when the true basis is determined to be zero"). Accordingly, we hold under the Golsen rule that we are bound to follow the Ninth Circuit decision in Keller, which is squarely on point. Petitioner's motion for summary judgment will be granted.

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued, and decision will be entered under Rule 155.